John N. Moscato, Trial Attorney
   For Plaintiff United States of America
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
999 18th Street, Suite 945 N
Denver, CO   80202
Telephone (303) 312 -7346

Carolyn L. McIntosh
   For Defendant Union Pacific Railroad Company
Patton Boggs LLP
1660 Lincoln Street, Suite 1900
Denver, CO  80264
Telephone (303) 830-1776



RECEIVED
AUG 0 2 2005
JUDGE'S COPY

FILED IN UNITED STATES DISTRICT
COURT DISTRICT OF UTAH

NOV 1 4 2005

By MARKUS B. ZIMMER, Clerk

DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

UNITED STATES OF AMERICA,

       Plaintiff,

    v.

UNION PACIFIC RAILROAD
COMPANY,

      Defendant.

CASE NO. ____

**CONSENT DECREE**

Judge Dee Benson
DECK TYPE: Civil
DATE STAMP: 08/02/2005 @ 11:57:16
CASE NUMBER:  2:05CV00650  DB

TABLE OF CONTENTS

I.      BACKGROUND...........................................................................................1

II.     JURISDICTION ..........................................................................................4

III.    PARTIES BOUND .......................................................................................5

IV.     DEFINITIONS ...........................................................................................6

V.      GENERAL PROVISIONS............................................................................12
        Objectives of the Parties..........................................................................12
        Commitments by Settling Defendant. .........................................................12
        Compliance With Applicable Law. .............................................................12

VI.     PERFORMANCE OF THE WORK BY SETTLING DEFENDANT............................13
        Permits...............................................................................................13
        Supervising Contractor............................................................................13
        Upper Eureka Gulch Remedial Action.........................................................15
        Provision of Quarry Material. ...................................................................18
        Restrictive Easements. ...........................................................................20
        Institutional Controls..............................................................................22

VII.    REMEDY REVIEW .....................................................................................23
        EPA Selection of Further Response Actions...................................................23
        Settling Defendant's Obligation To Perform Further Response Actions......................23

VIII.   QUALITY ASSURANCE, SAMPLING, AND DATA ANALYSIS ...........................24

IX.     ACCESS..................................................................................................26

X.      REPORTING REQUIREMENTS......................................................................28

XI.     EPA APPROVAL OF PLANS AND OTHER SUBMISSIONS ..................................30
        Resubmission of Plans. ...........................................................................31

XII.    PROJECT MANAGERS.................................................................................32

XIII.   ASSURANCE OF ABILITY TO COMPLETE WORK ...........................................33

XIV.    CERTIFICATION OF COMPLETION...............................................................35
        Completion of the Remedial Action.............................................................35

XV.     EMERGENCY RESPONSE ............................................................................37

XVI.    PAYMENTS FOR RESPONSE COSTS ..............................................................38

XVII.   INDEMNIFICATION AND INSURANCE ...........................................................39

XVIII.  FORCE MAJEURE......................................................................................41

XIX.    DISPUTE RESOLUTION ..............................................................................44
        Informal Dispute Resolution. ...................................................................44
        Statements of Position..............................................................................44

Formal Dispute Resolution.................................................................45

XX.   STIPULATED PENALTIES .......................................................48
      Stipulated Penalty Amounts - Tier 1.........................................48
      Stipulated Penalty Amounts - Tier 2. ........................................49

XXI.  COVENANTS NOT TO SUE AND RESERVATIONS BY PLAINTIFF ..................53
      United States' Covenant Not To Sue. ........................................53
      United States' Pre-Certification Reservations..............................54
      United States' Post-Certification Reservations ............................54
      United States' General Reservations of Rights. ............................55
      Work Takeover...............................................................56

XXII. COVENANTS NOT TO SUE AND RESERVATIONS BY SETTLING
      DEFENDANT ..................................................................59
      Settling Defendant's Covenant Not to Sue. ..................................59
      Waiver of Claims Against De Micromis Parties. .............................61

XXIII. EFFECT OF SETTLEMENT; CONTRIBUTION PROTECTION..............................62

XXIV. ACCESS TO INFORMATION .......................................................63
      Business Confidential and Privileged Documents. ...........................64

XXV.  RETENTION OF RECORDS ........................................................65

XXVI. NOTICES AND SUBMISSIONS .....................................................66

XXVII. EFFECTIVE DATE .............................................................68

XXVIII. RETENTION OF JURISDICTION .................................................68

XXIX. APPENDICES..................................................................69

XXX.  COMMUNITY RELATIONS.........................................................69

XXXI. MODIFICATION................................................................70

XXXII. LODGING AND OPPORTUNITY FOR PUBLIC COMMENT.................................70

XXXIII. SIGNATORIES/SERVICE .......................................................71

XXXIV. FINAL JUDGMENT.............................................................71

## APPENDICES

"Appendix A" contains two maps; the first map illustrates the Site Boundaries and the UEG Remedial Action Area boundary; the second map shows the location of the Lime Peak Quarry.

"Appendix B" is the ROD.

"Appendix C" is a map of Response Action Structures located on Settling Defendant's Property.

"Appendix D" contains, by material, type, and volume, and unit rates for, Quarry Material to be provided by Settling Defendant.

"Appendix E" contains a form of easement to be filed in the chain of title for property upon which a Response Action Structure is or will be built.

"Appendix F" contains an identification of Settling Defendant's property which will be transferred to the City of Eureka in accordance with Paragraph 24.

# I. **BACKGROUND**

A.　　The United States of America ("United States"), on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), filed a complaint in this matter pursuant to Sections 106, 107, and 113 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), as amended, 42 U.S.C. §§ 9606, 9607, and 9613, against the Union Pacific Railroad Company (the "Settling Defendant").

B.　　The United States in its complaint seeks, among other things, the reimbursement of costs, including accrued interest, incurred or to be incurred by the federal government in connection with response actions it has taken or will take at the Eureka Mills Superfund Site, located in Juab County, Utah (the "Site").   In addition, the United States' complaint seeks the performance of certain response actions at the Site by the Settling Defendant in a manner that is consistent with the National Contingency Plan, 40 C.F.R. Part 300, as amended, ("NCP").

C.　　In accordance with the NCP and Section 121(f)(1)(F) of CERCLA, 42 U.S.C. § 9621(f)(1)(F), EPA notified the State of Utah ("State") on October 1, 2003 of negotiations with the Settling Defendant regarding the recovery of costs and the implementation of response actions for the Site.   Although the State participated in settlement negotiations with the United States and the Settling Defendant, the State is not a party to this Consent Decree.

D.　　In accordance with Section 122(j)(1) of CERCLA, 42 U.S.C. § 9622(j)(1), EPA notified the United States Department of Interior, the trustee for natural resources at the Site, on February 13, 2003 of negotiations with potentially responsible parties regarding the release of hazardous substances that may have resulted in injury to or loss of the natural resources under federal trusteeship and encouraged the trustee(s) to participate in the negotiation of this Consent

Decree.   The United States Department of Interior declined to participate in settlement negotiations.

E.      By entering into this Consent Decree, the Settling Defendant does not admit to any legal or equitable liability arising out of the transactions or occurrences alleged in the United States' complaint in the above captioned action.  Further, the Settling Defendant does not admit or acknowledge that any release or threatened release of hazardous substances at or from the Eureka Mills Site has occurred, that it contributed to any such release or, alternatively, that any such release constitutes an imminent or substantial endangerment to the public health or welfare or the environment.  Settling Defendant asserts that its ownership of on-Site land, which Settling Defendant contends arose solely in furtherance of acceptance of cargo for carriage pursuant to a published tariff, does not alone provide any basis for liability under Sections 106, 107, and 113 of CERCLA, 42 U.S.C. §§ 9606, 9607, and 9613.  Settling Defendant does not admit and retains the right to controvert any of the factual or legal statements or determinations made herein in any judicial or administrative proceeding except in an action to enforce this Consent Decree or as provided in paragraph 89.a., or in a dispute resolution proceeding under Section XIX of this Consent Decree.  Specifically, this Consent Decree shall not be admissible in any judicial or administrative proceeding against the Settling Defendant, over its objection, as proof of liability or as an admission of any fact asserted herein.  Settling Defendant does agree, however, to the Court's jurisdiction to enter and enforce this Consent Decree.  In any such proceedings to enter or enforce this Consent Decree, the Settling Defendant shall not challenge the terms of this Consent Decree.  This Consent Decree shall not be admissible for any purpose, for or against either Party, in any judicial or administrative proceeding concerning natural resource damages.

F.      Pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, EPA placed the Site on the National Priorities List, set forth at 40 C.F.R. Part 300, Appendix B, by publication in the Federal Register on September 5, 2002.  See 67 Fed. Reg. 56757 (Sept. 5, 2002).

G.      In response to the releases and threat of further releases of a hazardous substance at or from the Site, from January 2001 to July 2002, EPA conducted a Remedial Investigation and Feasibility Study ("RI/FS") at the Site pursuant to 40 C.F.R. § 300.430.  EPA completed the RI/FS for the Site on July 23, 2002.

H.      Pursuant to Section 117 of CERCLA, 42 U.S.C. § 9617, EPA published notice of the completion of the Feasibility Study ("FS") and of proposed plans for remedial actions on July 23, 2002, in a local newspaper of general circulation.  EPA provided an opportunity for written and oral comments from the public on the proposed plan for remedial action and held a public meeting to discuss the plan.  A copy of the transcript of the public meeting is available as part of the administrative record upon which EPA based its selection of the response actions for the Site. The administrative record for the Site is located at the EPA Region 8 Superfund Records Center, 999 18th Street, Suite 300, Denver, Colorado 80202 and at Eureka City Hall, 15 North Church Street, Eureka, Utah.

I.      Solely to study and undertake response actions in manageable phases, EPA divided the Site into "Operable Units."  Within each Operable Unit, EPA further identified "Response Action Areas" within which the implementation of response actions requires the construction of "Response Action Structures."

J.      The decision by EPA on the response actions to be implemented for lead contaminated soils at Operable Units 00 through 03 of the Site, in which the State concurred, is embodied in a final Record of Decision ("ROD"), executed on September 30, 2002.  The ROD

3

includes responsiveness summaries to the public comments.  Notice of the selected remedial action was published in accordance with Section 117(b) of CERCLA, 42 U.S.C. § 9617(b), on October 18, 2002, in The Eureka Reporter.

K.      Based on the information presently available, EPA believes that the UEG Remedial  Action (as defined below) and the Work (as defined below) required under this Consent Decree will be properly and promptly conducted by the Settling Defendant if implemented by the Settling Defendant in accordance with the requirements of this Consent Decree.

L.      Solely for the purposes of Section 113(j) of CERCLA, 42 U.S.C. § 9613(j), the UEG Remedial Action selected by EPA in the ROD and the Work to be performed by the Settling Defendant under this Consent Decree shall, if performed in accordance with the Consent Decree, constitute a response action taken or ordered by the President.

M.      The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith, that implementation of this Consent Decree will expedite the cleanup of the Site and will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, it is hereby Ordered, Adjudged, and Decreed:

## II. JURISDICTION

1.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 9606, 9607, and 9613(b).  This Court also has personal jurisdiction over the Parties.  Solely for the purposes of this Consent Decree and the underlying complaint, Settling Defendant waives all objections and defenses that it may have to

jurisdiction of the Court or to venue in this District. Settling Defendant shall not challenge either the terms of this Consent Decree, or the Court's jurisdiction to enter and enforce this Consent Decree.

## III. **PARTIES BOUND**

2.      This Consent Decree applies to and is binding upon the United States and upon Settling Defendant and its successors and assigns. Any change in ownership or corporate status of the Settling Defendant including, but not limited to, the transfer of any asset(s), shall in no way alter the Settling Defendant's responsibilities under this Consent Decree.

3.      The Settling Defendant shall provide a copy of this Consent Decree to any person or party hired to perform the Work (as defined below) required by this Consent Decree and also to each person representing the Settling Defendant with respect to the Site or the Work. Any agreement entered into by Settling Defendant for the performance of the Work at this Site shall require the performance of all Work in a manner which conforms with the terms of this Consent Decree. The Settling Defendant, its representatives, or its contractors shall provide written notice and a copy of this Consent Decree to all subcontractors hired to perform any portion of the Work required by this Consent Decree. The Settling Defendant shall nonetheless be responsible for ensuring that its contractors, subcontractors, or any other individual or party performing Work on Settling Defendant's behalf shall perform the Work contemplated herein in accordance with this Consent Decree. With regard to the activities undertaken pursuant to this Consent Decree, each contractor, subcontractor, or any other individual or party performing Work on Settling Defendant's behalf shall be deemed to be in a contractual relationship with the Settling Defendant within the meaning of Section 107(b)(3) of CERCLA, 42 U.S.C. § 9607(b)(3).

## IV. DEFINITIONS

4.      Unless otherwise expressly provided in this Section, terms used in this Consent Decree which are defined in CERCLA, or in regulations promulgated under CERCLA, shall have the meaning assigned to them in CERCLA or in such regulations.  Whenever terms listed below are used in this Consent Decree, or in the appendices attached hereto or documents incorporated hereunder, the following definitions shall apply:

a.      **"Borrow Material"** shall mean filler material, sand, gravel, cobble, top soil, clay, fill, or boulders extracted from those locations designated by EPA as "Borrow Sources;"

b.      **"CERCLA"** shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601 - 9675;

c.      **"Consent Decree"** shall mean this Decree and all appendices attached hereto, listed in Section XXIX.  In the event of conflict between this Consent Decree and any appendix, this Consent Decree shall control;

d.      **"Day"** shall mean a calendar day unless expressly stated to be a working day.  "Working Day" shall mean a day other than a Saturday, Sunday, Federal holiday, or State of Utah holiday.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, Federal holiday, or State of Utah holiday the period shall run until the close of business of the next Working Day;

e.      **"Effective Date"** shall be the date identified and described in Section XXVII, of this Consent Decree;

f.      **"EPA"** shall mean the United States Environmental Protection Agency and any successor departments or agencies of the United States;

g.      **"Eureka Mills Site Special Account"** shall mean the special account established for this Site by EPA as further described in Paragraph 56 of this Consent Decree;

h.      **"Future Response Costs"** shall mean all costs, including, but not limited to, direct and indirect costs that the United States incurs after the Effective Date of this Consent Decree: in reviewing or developing plans, reports and other items pursuant to this Consent Decree; in verifying the Work; in implementing, overseeing, or enforcing this Consent Decree, including, but not limited to, payroll costs, contractor costs, travel costs, laboratory costs; the costs incurred pursuant to Section XI (EPA Approval of Plans and Other Submissions), including the cost of attorney time and any monies paid to secure access, to secure or implement Institutional Controls including, and/or the amount of just compensation; and costs incurred in connection with Section XV (Emergency Response). Future Response Costs shall also include all Interest on those Past Response Costs Settling Defendant has agreed to reimburse under this Consent Decree that has accrued pursuant to 42 U.S.C. § 9607(a) prior to the Effective Date of this Consent Decree;

i.      **"Interest"** shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a). The applicable rate of Interest shall be the rate in effect at the time the interest accrues. The rate of Interest is subject to change on the first day of October of each calendar year;

    j.    **"Institutional Controls"** shall mean any controls developed by EPA, the State, City of Eureka or Juab County to implement, monitor, and maintain the Response Actions selected for this Site.  Institutional Controls may include, but are not limited to: (i) mandatory controls which require actions necessary to protect or maintain the Response Actions; (ii) prohibitions which limit activities or land use that would disturb Waste Material or make Waste Material more available to or mobile in the environment; or (iii) prohibitions or limitations on activities that would compromise the integrity of the Response Actions.  Institutional Controls may be enforced at the Site through State, county, or municipal codes, regulations, or laws;

    k.    **"Lime Peak Quarry"** shall mean that area approximately 1 mile east of the Site from which boulders, rip rap, gravel, road base, and other rock product is extracted.  The Lime Peak Quarry is located in the general area depicted on the second map in Appendix A;

    l.    **"National Contingency Plan"** or **"NCP"** shall mean the National Oil and Hazardous Substances Pollution Contingency Plan promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, codified at 40 C.F.R. Part 300, and any amendments thereto;

    m.    **"Operation and Maintenance"** shall mean all activities undertaken by EPA or its designee(s), or the State or its designee(s), to maintain the effectiveness of the response actions implemented at the Site pursuant to the ROD;

    n.    **"Paragraph"** shall mean a portion of this Consent Decree identified by an Arabic numeral or an upper case letter;

o.      **"Parties"** shall mean the United States and the Settling Defendant, Union Pacific Railroad Company;

p.      **"Past Response Costs"** shall mean all costs, including, but not limited to, direct and indirect costs and costs of oversight, that the United States paid or incurred in connection with the Site through the Effective Date of this Consent Decree, including State expenditures made pursuant to Site specific EPA-State cooperative agreement(s), plus Interest on all such costs which has accrued pursuant to 42 U.S.C. § 9607(a);

q.      **"Performance Standards"** shall mean those cleanup standards, standards of control, and other substantive requirements, criteria or limitations, identified in the ROD and the Remedial Action Work Plan, as amended, that the Upper Eureka Gulch Remedial Action and Settling Defendant's production of Quarry Material must attain and maintain;

r.      **"Plaintiff"** shall mean the United States of America;

s.      **"Quarry Material"** shall mean the 261,680 tons of product which meets the specifications set forth in the Remedial Action Work Plan.  An identification of the types and corresponding unit rates of Quarry Material, and the volume of each type of Quarry Material to be provided to EPA by the Settling Defendant, is set forth Appendix D;

t.      **"RCRA"** shall mean the Solid Waste Disposal Act, as amended, 42 U.S.C. §§ 6901- 6992k (also known as the Resource Conservation and Recovery Act);

u.      **"Record of Decision"** or "ROD" shall mean the EPA's September 30, 2002 "Lead-Contaminated Soils ROD" and all attachments thereto which select response actions for the long-term cleanup of the Site.  The response actions selected by the ROD

9

for this Site involve four components: (1) continued cleanup of lead-contaminated soils in residential yards; (2) cleanup of mine waste piles and other non-residential areas; (3) a continuation of the public health actions initiated under the Early Interim Action ROD; and (4) Institutional Controls. The ROD is attached hereto at Appendix B;

      v.     **"Remedial Action Work Plan"** or **"RAWP"** shall mean the work plan for implementation of the response action, operation and maintenance, and Institutional Controls for Operable Units 00, 01, 02, and 03 at the Site, approved by EPA in May 2003 and amended in February 2005, and any amendments thereto. The RAWP is incorporated into this Consent Decree by reference and is an enforceable part of this Consent Decree insofar as it relates to the implementation of the UEG Remedial Action as that term is defined in Subparagraph 4.cc and the production of Quarry Material as that term is defined in Subparagraph 4.s;

      w.     **"Response Action Structures"** shall mean such man-made terrain features, contours, or structures identified in the RAWP, constructed or to be constructed at the Site by EPA or its designees. Such features or structures may include, but are not limited to, access control features, boulders, embankments, fencing, gates, roadways, retaining walls, drainages, sedimentation basins, and caps. Appendix C contains a map depicting those portions of Settling Defendant's Property upon which EPA plans to place or has placed Response Action Structures;

      x.     **"Section"** shall mean a portion of this Consent Decree identified by a Roman numeral;

      y.     **"Settling Defendant"** shall mean the Union Pacific Railroad Company, its divisions, subsidiaries, and predecessors in interest;

z.      **"Site"** shall mean the Eureka Mills National Priority List Site, located approximately 80 miles southwest of Salt Lake City and encompassing the City of Eureka and adjacent unincorporated areas of Juab County, Utah.  The Site boundaries are generally depicted in Appendix A;

aa.     **"State"** shall mean the State of Utah, including all of its departments, agencies, and instrumentalities;

bb.     **"Supervising Contractor"** shall mean the principal contractor retained by the Settling Defendant to supervise and direct the implementation of the Work under this Consent Decree;

cc.     **"UEG Remedial Action"** shall mean those activities to be undertaken by the Settling Defendant pursuant to this Consent Decree to implement that portion of the ROD and the RAWP which applies to the Upper Eureka Gulch ("UEG") Remedial Action Area.   The "UEG Remedial Action" shall not include the operation and maintenance activities or Institutional Controls required by the RAWP;

dd.     **"UEG Remedial Action Area"** shall mean that portion of the Site which is the subject of the UEG Remedial Action that is identified in Appendix A;

ee.     **"United States"** shall mean the United States of America, including all of its departments, agencies, and instrumentalities;

ff.     **"Waste Material"** shall mean: (1) any "hazardous substance" under Section 101(14) of CERCLA, 42 U.S.C. § 9601(14); (2) any "pollutant or contaminant" under Section 101(33), 42 U.S.C. § 9601(33); (3) any "solid waste" under Section 1004(27) of RCRA, 42 U.S.C. § 6903(27); and (4) any "hazardous materials" or

"hazardous substances" as defined in the Utah Hazardous Substances Mitigation Act, Utah Code Ann., Sections 19-6-301 through 19-6-325; and

gg.    **"Work"** shall mean the following actions by the Settling Defendant taken in accordance with the terms and conditions specified in this Consent Decree: the implementation of the UEG Remedial Action as that term is identified in Paragraph 4. cc; the production of Quarry Material as specified in Paragraphs 18 - 19; the encumbrance of certain property as required in Paragraphs 20 - 24; and the transfer of certain property as specified in Paragraph 24.

## V. __GENERAL PROVISIONS__

Objectives of the Parties.

5.    The objectives of the Parties entering into this Consent Decree are to: (a) protect public health, welfare and the environment at the Site through the implementation of the Work at the Site by the Settling Defendant; (b) provide for the reimbursement of response costs to Plaintiff; and (c) resolve the claims between the Parties as provided in this Consent Decree.

Commitments by Settling Defendant.

6.    Settling Defendant shall finance and perform the Work in accordance with this Consent Decree, the ROD, and the RAWP and all other plans, standards, specifications, and schedules set forth herein or developed by the Settling Defendant and approved by EPA pursuant to this Consent Decree.   Settling Defendant shall also reimburse the United States for Past Response Costs and Future Response Costs as provided in Section XVI of this Consent Decree.

Compliance With Applicable Law.

7.    All Work undertaken by the Settling Defendant shall be performed in accordance with the requirements of all applicable federal and state laws and regulations, this Consent

Decree, the ROD, and the RAWP.  The Work conducted pursuant to this Consent Decree, if approved by EPA, shall be considered to be consistent with the NCP.

## VI. <u>PERFORMANCE OF THE WORK BY SETTLING DEFENDANT</u>

<u>Permits.</u>

8.     As provided in Section 121(e) of CERCLA, 42 U.S.C. § 9621(e) and Section 300.400(e) of the NCP, 40 C.F.R. § 300.400(e), no permit shall be required for any portion of the Work conducted entirely on-Site.  Except as specifically provided for in Paragraph 19, where any portion of the Work that is not on-Site requires a federal or state permit or approval, Settling Defendant shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.

9.     The Settling Defendant may seek relief under the provisions of Section XVIII (Force Majeure) of this Consent Decree for any delay in the performance of the Work resulting from a failure to obtain, or a delay in obtaining, any permit required for the Work.

10.     This Consent Decree is not, and shall not be construed to be, a permit issued pursuant to any federal or state statute or regulation.

<u>Supervising Contractor.</u>

11.     All aspects of the Work to be performed by Settling Defendant pursuant to Sections VI (Performance of the Work by Settling Defendant), VII (Remedy Review), VIII (Quality Assurance, Sampling and Data Analysis), and XV (Emergency Response) of this Consent Decree shall be under the direction and supervision of the Supervising Contractor, the selection of which shall be subject to approval by EPA. Within ten (10) days after the lodging of this Consent Decree, Settling Defendant shall notify EPA and the State in writing of the name, title, and qualifications of any contractor proposed to be the Supervising Contractor.  With

13

respect to any contractor proposed to be Supervising Contractor, Settling Defendant shall demonstrate that the proposed contractor has a quality system that complies with ANSI/ASQC E4-1994, "Specifications and Guidelines for Quality Systems for Environmental Data Collection and Environmental Technology Programs," (American National Standard, January 5, 1995), by submitting a copy of the proposed contractor's Quality Management Plan (QMP). The QMP should be prepared in accordance with "EPA Requirements for Quality Management Plans (QA/R-2)" (EPA/240/B-01/002, March 2001) or equivalent documentation as determined by EPA.

12.     After reviewing the qualifications of the proposed Supervising Contractor, EPA will issue a notice of disapproval or an authorization to proceed. If at any time thereafter, Settling Defendant proposes to change a Supervising Contractor, Settling Defendant shall give notice to EPA and the State of said change and must obtain an authorization to proceed from EPA before the new Supervising Contractor performs, directs, or supervises any Work under this Consent Decree. If EPA disapproves a proposed Supervising Contractor, EPA will notify Settling Defendant in writing. Settling Defendant shall submit to EPA and the State a list of contractors, including the qualifications of each contractor, that it finds acceptable within thirty (30) days of receipt of EPA's disapproval of the contractor previously proposed. EPA will provide written notice of the names of any contractor(s) that it disapproves and an authorization to proceed with respect to any of the other contractors. Settling Defendant may select any contractor from that list that is not disapproved and shall notify EPA and the State of the name of the contractor selected within twenty-one (21) days of EPA's authorization to proceed.

13.     If EPA fails to provide written notice of its authorization to proceed or disapproval as provided in Paragraph 12 and this failure prevents the Settling Defendant from

meeting one or more deadlines in a plan approved by the EPA pursuant to this Consent Decree, Settling Defendant may seek relief under the provisions of Section XVIII (Force Majeure).

Upper Eureka Gulch Remedial Action.

14.      Settling Defendant shall implement the UEG Remedial Action.    Settling Defendant may begin implementation of any on-Site aspect of the UEG Remedial Action no sooner than June 13, 2005 but, regardless of when the UEG Remedial Action is commenced, must fully complete construction of the UEG Remedial Action no later than December 1, 2006. The Settling Defendant shall submit to EPA and the State all plans, submittals, or other deliverables required under this Consent Decree or the RAWP in accordance with the schedule for review and approval required under Section XI (EPA Approval of Plans and Other Submissions).  Unless otherwise directed by EPA, Settling Defendant shall not commence any on-Site portion of the UEG Remedial Action prior to EPA's approval of any deliverable for that portion of the UEG Remedial Action, as required by this Consent Decree and the RAWP.  The Settling Defendant shall continue to implement the UEG Remedial Action until all Performance Standards are achieved and for so long thereafter as is otherwise required under this Consent Decree.

      a.      Settling Defendant may obtain Borrow Material for the UEG Remedial Action from the Borrow Sources designated by EPA so long as Settling Defendant's use of the Borrow Sources does not interfere with EPA's use of those resources.  The Parties shall coordinate their use of the Borrow Sources to ensure that Settling Defendant has adequate access to said Sources.  Consistent with Paragraph 19, Settling Defendant may obtain Quarry Material for the UEG Remedial Action from the Lime Peak Quarry.  The unavailability of Borrow Material or Quarry Material as provided in this Subparagraph

shall not, however, excuse Settling Defendant from fully implementing the UEG Remedial Action.

15. If EPA determines that modification to the RAWP is necessary to achieve and maintain the Performance Standards for the UEG Remedial Action or to carry out and maintain the effectiveness of the response actions set forth in the ROD, EPA may make such modification, provided, however, a modification may only be made pursuant to this Paragraph to the extent that it is consistent with the scope of the remedy selected in the ROD. For the purposes of this Paragraph, the "scope of the remedy selected in the ROD" means the protection of human health or the environment through the implementation of the UEG Remedial Action which includes but is not limited to the excavation and removal or consolidation of contaminated soil and mine wastes, the replacement or covering of such soils or mine wastes with Borrow or Quarry Material, and the construction or improvement of access roads, drainages, ditches, and sedimentation ponds.

a. If Settling Defendant objects to any modification determined by EPA to be necessary pursuant to this Paragraph, it may seek dispute resolution pursuant to Section XIX (Dispute Resolution). The RAWP shall be modified in accordance with final resolution of the dispute. Settling Defendant shall implement the modified RAWP.

b. Nothing in this Paragraph shall be construed to limit EPA's authority to require performance of further response actions as otherwise provided in this Consent Decree.

16. Settling Defendant acknowledges and agrees that nothing in this Consent Decree or the RAWP constitutes a warranty or representation of any kind by Plaintiff that compliance

with the requirements set forth in the Consent Decree or RAWP will achieve Performance Standards.

17.     Prior to any off-Site shipment of Waste Material that is generated by the Work to any waste management facility, Settling Defendant shall provide written notification of any such shipment to the appropriate state environmental official in the receiving facility's state and to the EPA Project Manager, and to the State's Eureka Mills Superfund Site Project Manager. However, this notification requirement shall not apply to any off-Site shipments when the total volume of all such shipments will not exceed 100 cubic yards or 1,000 gallons.  Nothing in this Paragraph is intended to, nor shall it, relieve the Settling Defendant of its obligations to comply with waste shipment notification and reporting requirements under state or federal law.

a.     Settling Defendant shall include in the written notification the following information: (i) the name and location of the facility to which the Waste Material is to be shipped; (ii) the type and quantity of the Waste Material to be shipped; (iii) the expected schedule for the shipment of the Waste Material; and (iv) the method of transportation. Settling Defendant shall notify EPA, the State, and the state in which the planned receiving facility is located of major changes in the shipment plan, such as a decision to ship the Waste Material to another facility within the same state, or to a facility in another state.

b.     The identity of the receiving facility and state will be determined by Settling Defendant following the award of the contract for any such necessary action. Settling Defendant shall provide the information required by Paragraph 17 a. as soon as practicable after the award of the contract and before the Waste Material is actually shipped.

17

Provision of Quarry Material.

18.     Settling Defendant agrees to provide to EPA 261,680 tons of Quarry Material meeting the Performance Standards set forth in the RAWP. An identification of the types of Quarry Material, and the volume of each type of Quarry Material, to be provided to EPA by the Settling Defendant is set forth in Appendix D. The Quarry Material provided by Settling Defendant shall be delivered to EPA at the Lime Peak Quarry and stockpiled at locations within the Lime Peak Quarry. Settling Defendant may begin activities at the Borrow Sources and Lime Peak Quarry related to the delivery of the Quarry Material no sooner than June 13, 2005. Settling Defendant shall deliver twenty-five percent (25%) of the 2006 Quarry Material identified in Appendix D to EPA by April 17, 2006, with the remaining seventy-five percent (75%) of 2006 Quarry Material to be delivered by Settling Defendant to EPA by May 29, 2006. All of the 2007 Quarry Material identified in Appendix D shall be delivered by Settling Defendant to EPA by October 2, 2006. All aspects of the delivery, placement, and stockpiling of Quarry Material delivered by Settling Defendant pursuant to this Paragraph shall be coordinated in advance with, and approved by, EPA. The mix and volume of particular types of Quarry Material specified in Appendix D may be altered upon the mutual agreement of the Parties without need to modify this Consent Decree.

19.     Settling Defendant may procure some or all of the Quarry Material referenced in Paragraph 18 from sources other than Lime Peak Quarry. Alternatively, Settling Defendant may, in accordance with the terms of this Paragraph, produce some or all of the Quarry Material required by Paragraph 18 by assuming responsibility for the operation of Lime Peak Quarry. Settling Defendant shall inform EPA and the State of its election under this Paragraph or Paragraph 18, in writing, within five (5) days of the Effective Date of this Consent Decree.

a.     The United State's contractor, Shaw Environmental, will retain the mining permits for Lime Peak Quarry issued by the State of Utah and the mining bond for Lime Peak Quarry.  Prior to commencing operations at Lime Peak Quarry, Settling Defendant must complete an assignment of the right to operate Lime Peak Quarry with Shaw Environmental.  Settling Defendant shall otherwise be solely responsible for obtaining all required bonds, permits, licenses, insurance, personnel, materials, equipment, utilities, as well as any other resource(s) necessary to mobilize quarry operations, extract and process the Quarry Material, stockpile the Quarry Material at the quarry processing area within the Lime Peak Quarry permit boundaries, and demobilize Settling Defendant's quarry operations.

b.     To the extent that existing permits for the Lime Peak Quarry are held by EPA, its contractors, agents, or designees, EPA will, in a timely manner, take all reasonable actions necessary to facilitate an assignment of the right to operate the Quarry under these permits to Settling Defendant for the duration of Settling Defendant's activities under this Paragraph.

c.     All activities undertaken by Settling Defendant during its operation of the Lime Peak Quarry shall conform to all requirements and specifications contained in the RAWP and the State of Utah permits for Lime Peak Quarry.  During the period(s) in which it operates in any Borrow Source or in the Lime Peak Quarry, Settling Defendant shall not interfere with EPA's access to EPA's water tower(s) and material stockpiles.

d.     Should Settling Defendant be unable to extract from Lime Peak Quarry the volume and/or type of Quarry Material required by Paragraph 18, through its operation of Lime Peak Quarry pursuant to this Paragraph, Settling Defendant shall

discharge its obligation to EPA under Paragraph 18 by procuring Quarry Material from another source or paying to EPA the cash equivalent of the undelivered balance of the volume and/or the type of Quarry Material required under Paragraph 18, as specified in Paragraph 19(e), infra.

e.      For purposes of Paragraph 19(d), the cash equivalent shall be based on the unit rates for each type of Quarry Material specified in Appendix D, and shall be the lesser of either: i) EPA's actual cost of acquiring any undelivered balance(s) of Quarry Material from a third party, including transportation and staging costs for same; or ii) the unit rate for the type and quantity of undelivered balance(s) of Quarry Material, plus 25% of said unit rate.

f.      During the period in which Settling Defendant operates Lime Peak Quarry pursuant to the requirements of this Paragraph, Settling Defendant shall be solely responsible for any acts and occurrences which take place within those portions of Lime Peak Quarry that are under Settling Defendant's exclusive control.

Restrictive Easements.

20.      Where EPA has built, or plans to build, Response Action Structure(s) on property located on Site which, as of the Effective Date of this Consent Decree, is owned by the Settling Defendant (hereafter in Paragraphs 20, 21 and 22 referred to as the "affected property", as shown in Appendix C), Settling Defendant shall prepare, execute, and record in the Office of the Juab or, if appropriate, Utah County Recorder easements, running with the land, in substantially the form depicted in Appendix E, that are enforceable under the laws of the State of Utah.  Said easements shall be recorded as provided in Paragraph 22 and shall incorporate such covenants and restrictions as are necessary to allow EPA or its delegate(s) to access the affected property

for purposes of implementing this Consent Decree or the response actions identified in the ROD, and shall also grant EPA or its delegate(s) permission to construct, inspect, maintain, repair, operate, close, or remove any Response Action Structure(s) required by the Consent Decree or the ROD on the affected property. The covenants shall also provide that Settling Defendant, its grantee, and any subsequent grantees shall not interfere with the Response Action Structures or take any action which would cause or exacerbate a release of hazardous substances on the affected property. The easements shall run with the land, and specifically require Settling Defendant's grantee and all subsequent grantees to abide by the terms, conditions, and obligations of each such easement.

21. EPA has commenced or completed construction of three of the four Response Action Structures to be protected by the easements required by Paragraph 20. For property affected by the Response Action Structures on Chief Mill Site No. 1 Access Road, Lower Eureka Gulch, and the Chief Mine No. 1 Response Action Areas, EPA shall provide notice to Settling Defendant pursuant to Section XXVI of this Consent Decree (Notices and Submissions) not later than thirty (30) days of the Effective Date of this Consent Decree. The notice provided by EPA shall contain a plat depicting the location and configuration of the Response Action Structure(s) as built. Settling Defendant shall, not later than sixty (60) days after the Effective Date of this Consent Decree, submit to EPA for approval a draft easement, in substantially the form attached hereto as Appendix E, for property affected by these three Response Action Structures. The fourth Response Action Structure will be constructed by Settling Defendant in connection with its implementation of the UEG Remedial Action. Within thirty (30) days of EPA's approval of Settling Defendant's as-built drawings for the UEG Remedial Action, Settling Defendant shall

21

submit to EPA for approval a draft easement, in substantially the form attached hereto as

Appendix E, for the affected properties associated with the fourth Response Action Structure.

submit to EPA for approval a draft easement, in substantially the form attached hereto as Appendix E, for the affected properties associated with the fourth Response Action Structure.

22.     Within fifteen (15) days of EPA's approval and acceptance of the draft easement, Settling Defendant shall record each easement with the Office of the Juab or, if appropriate, Utah County Recorder. Within thirty (30) days of recording each easement, Settling Defendant shall provide EPA and the State with a certified copy of the original recorded easement showing the clerk's recording stamps.

Institutional Controls.

23.     Commencing on the Effective Date of this Consent Decree, Settling Defendant shall not use any property it owns on the Site in any manner that would interfere with or adversely affect the implementation, integrity, or protectiveness of the response actions for the Site required by the ROD and RAWP.  Settling Defendant further agrees to comply with all Institutional Controls at the Site.

24.     In order to ensure the enforcement of Institutional Controls on those portions of the property owned by Settling Defendant, Settling Defendant hereby represents that it will transfer the property identified in Appendix F to the City of Eureka, Utah.  The transfer of the affected property identified in Appendix C shall be completed within sixty (60) days of the recording of each easement, as required by Paragraph 22.  Transfer of the remaining property identified in Appendix F to the City of Eureka, Utah shall be completed within ninety (90) days of the Effective Date of this Consent Decree.

## VII. **REMEDY REVIEW**

<u>EPA Selection of Further Response Actions.</u>

25.     If EPA determines at any time, that the UEG Remedial Action is not protective of human health and the environment, EPA may select further response actions for the UEG Remedial Action Area in accordance with the requirements of CERCLA and the NCP.

  a.     Settling Defendant and, if required by Sections 113(k)(2) or 117 of CERCLA, 42 U.S.C. §§ 9613(k)(2) or 9617, the public, will be provided with an opportunity to comment on any further response actions proposed by EPA as a result of the review conducted pursuant to Section 121(c), 42 U.S.C. § of CERCLA 9621(c), and to submit written comments for the record during the comment period.  Any comments by Settling Defendant shall be provided to EPA and the State.

<u>Settling Defendant's Obligation To Perform Further Response Actions.</u>

26.     If EPA selects further response actions for the UEG Remedial Action Area, the Settling Defendant shall undertake such further response actions to the extent that the reopener conditions in Paragraphs 86 or 87 (United States' reservations of liability based on unknown conditions or new information) are satisfied.  Settling Defendant may invoke the procedures set forth in Section XIX (Dispute Resolution) to dispute: (a) EPA's determination that the reopener conditions of Paragraphs 86 or 87 of Section XXI (Covenants Not To Sue and Reservations by Plaintiff) are satisfied; (b) EPA's determination that the UEG Remedial Action is not protective of human health and the environment; or (c) EPA's selection of the further response actions.  Disputes pertaining to whether the UEG Remedial Action is protective or to EPA's selection of further response actions shall be resolved pursuant to Paragraph 69 (record review).  If Settling Defendant is required to perform further response actions pursuant to this Paragraph, it shall

submit a plan for such work to EPA and the State for approval by EPA in accordance with the procedures set forth in Section VI (Performance of the Work by Settling Defendant) and shall implement the plan approved by EPA in accordance with the provisions of this Consent Decree.

## VIII.  QUALITY ASSURANCE, SAMPLING, AND DATA ANALYSIS

27.     To the extent sampling is required during the performance of any Work required under this Consent Decree, Settling Defendant shall use quality assurance, quality control, and chain of custody procedures for all samples as specified in the "Quality Control Plan" set forth in the RAWP, Volume IV.  If relevant to the proceeding, the Parties agree that validated sampling data generated in accordance with the Quality Control Plan shall be admissible as evidence, without objection, in any proceeding under this Consent Decree.  Settling Defendant shall ensure that EPA personnel and their authorized representatives are allowed access at reasonable times to all laboratories utilized by Settling Defendant in implementing this Consent Decree.  In addition, Settling Defendant shall ensure that such laboratories shall analyze all samples submitted by EPA pursuant to the Quality Control Plan for quality assurance monitoring.  Settling Defendant shall ensure that the laboratories it utilizes for the analysis of samples taken pursuant to this Consent Decree perform all analyses according to accepted EPA methods.  Accepted EPA methods consist of those methods that are documented in the "Contract Lab Program Statement of Work for Inorganic Analysis" and the "Contract Lab Program Statement of Work for Organic Analysis," dated February 1988, and any amendments made thereto during the course of the implementation of this Consent Decree.  However, upon application to EPA, and upon approval by EPA, the Settling Defendant may use other analytical methods which are as stringent as or more stringent than the Contract Lab Program ("CLP") approved methods.  Settling Defendant shall ensure that all laboratories it uses for analysis of samples taken pursuant to this Consent

Decree participate in an EPA or EPA-equivalent quality assurance/quality control ("QA/QC") program. Settling Defendant shall only use laboratories that have a documented Quality System which complies with ANSI/ASQC E4-1994, "Specifications and Guidelines for Quality Systems for Environmental Data Collection and Environmental Technology Programs," (American National Standard, January 5, 1995), and "EPA Requirements for Quality Management Plans (QA/R-2)," (EPA/240/B-01/002, March 2001). Settling Defendant may also propose to EPA, for approval by EPA, to use a laboratory with documentation that is equivalent to a documented Quality System which complies with ANSI/ASQC E4-1994. EPA may consider laboratories accredited under the National Environmental Laboratory Accreditation Program ("NELAP") as meeting the Quality System requirements. Settling Defendant shall ensure that all field methodologies utilized in collecting samples for subsequent analysis pursuant to this Consent Decree will be conducted in accordance with the procedures set forth in EPA's Quality Control Plan.

     a.    Upon request, the Settling Defendant shall allow split or duplicate samples to be taken by EPA or its authorized representatives. Settling Defendant shall notify EPA and the State not less than ten (10) days in advance of any sample collection activity unless shorter notice is agreed to by EPA. In addition, EPA shall have the right to take any additional samples that EPA deems necessary. Upon request, EPA and the State shall allow the Settling Defendant to take split or duplicate samples of any samples they take as part of EPA's oversight of the Settling Defendant's implementation of the Work.

     b.    Settling Defendant shall submit to EPA and the State one copy of the results of all sampling and/or tests or other data obtained or generated by or on behalf of

Settling Defendant with respect to the Site and/or the implementation of this Consent Decree unless EPA agrees otherwise.

28.     Notwithstanding any provision of this Consent Decree, the United States hereby retains all of its information gathering and inspection authorities and rights, including enforcement actions related thereto, under CERCLA, RCRA and any other applicable statutes or regulations.

## IX. ACCESS

29.     Commencing on the Effective Date of this Consent Decree, Settling Defendant hereby grants EPA, EPA's designees, and the State access to the property within the Site owned or controlled by Settling Defendant, for the purpose of conducting any activity related to this Consent Decree or implementation of the actions set forth in the ROD or RAWP, including, but not limited to, the following: monitoring the Work; verifying any data or information submitted to EPA; conducting investigations relating to contamination at or near the Site; obtaining samples; overseeing the actions set forth in the ROD or RAWP; and determining Settling Defendant's compliance with this Consent Decree.  If the Site, or any other property where access is needed to implement this Consent Decree, is owned or controlled by persons other than the Settling Defendant, Settling Defendant shall use "best efforts" to secure from such persons an agreement to provide access thereto for Settling Defendant, as well as for EPA and its representatives (including contractors), for the purpose of conducting any activity related to this Consent Decree.  The duty to determine property ownership is the responsibility of the Settling Defendant.   Property boundaries contained in the RAWP are based primarily on public information that was available at the time of the RAWP development and are not to be relied upon as a representation of the legal property boundaries.

a.      For purposes of Paragraph 29 of this Consent Decree, "best efforts" includes the payment of reasonable sums of money in consideration of access.  If any access agreements required by Paragraph 29 of this Consent Decree are not obtained within forty-five (45) days of the Effective Date of this Consent Decree, Settling Defendant shall promptly notify the United States in writing, and shall include in that notification a summary of the steps that Settling Defendant has taken to attempt to comply with Paragraph 29 of this Consent Decree.  If EPA determines that land/water use restrictions in the form of state or local laws, regulations, ordinances or other governmental controls are needed to implement the remedy selected in the ROD, ensure the integrity and protectiveness thereof, or ensure non-interference therewith, Settling Defendant shall not object to or impede EPA's efforts to secure such governmental controls.

b.      The United States may, as it deems appropriate, assist Settling Defendant in obtaining access in the form of contractual agreements.  Settling Defendant shall reimburse the United States in accordance with the procedures in Section XVI (Payments For Response Costs), for all costs, direct or indirect, incurred by the United States in obtaining such access including, but not limited to, the cost of attorney time and the amount of monetary consideration paid or just compensation.

c.      Notwithstanding any provision of this Consent Decree, the United States retains all of its access authorities and rights, as well as all of its rights to require land/water use restrictions, including enforcement authorities related thereto, under CERCLA, RCRA and any other applicable statute or regulations.

27

## X.  REPORTING REQUIREMENTS

30.     In addition to any other requirement of this Consent Decree, Settling Defendant shall prepare and submit to EPA and the State by electronic mail monthly progress reports that:

     a.     Describe the actions which have been taken toward achieving compliance with this Consent Decree during the previous month;

     b.     Include a summary of all results of sampling and tests and all QA/QC data received or generated by Settling Defendant or its contractors or agents in the previous month;

     c.     Identify all plans and other deliverables required by this Consent Decree completed and submitted during the previous month;

     d.     Describe all actions, including, but not limited to, data collection and implementation of work plans, that are scheduled for the next six weeks and provide other information relating to the progress of construction;

     e.     Include information regarding percentage of completion, unresolved delays encountered or anticipated that may affect the future schedule for implementation of the Work, and a description of efforts made to mitigate those delays or anticipated delays;

     f.     Include any modifications to the work plans or other schedules that Settling Defendant has proposed to EPA or that have been approved by EPA; and

     g.     Describe all activities undertaken in support of the Community Relations Plan during the previous month and those to be undertaken in the next six weeks.

31.     Settling Defendant shall submit the progress reports required by Paragraph 30 to EPA and the State by the tenth day of every month following the Effective Date of this Consent

Decree until EPA certifies that the Work is complete, pursuant to Paragraph 52 of Section XIV (Certification of Completion).   If requested by EPA, Settling Defendant shall also provide briefings for EPA and the State to discuss the progress of the Work.  The Settling Defendant shall notify EPA and the State of any change in the schedule described in the monthly progress report for the performance of any activity, including, but not limited to, data collection and implementation of work plans, no later than seven (7) days prior to the date the performance of the activity is due.

32.    Settling Defendant will participate in weekly Project Management meetings with EPA and EPA's on-site representative as described in Section 2.7 of the amended RAWP to ensure that the Work proceeds on schedule.  Participation in other meetings defined in Section 2.7 of the RAWP will be on an "as-needed" basis to effectively conduct the Work, provided that EPA provides sufficient advance notice to Settling Defendant to enable Settling Defendant to participate.

33.    Upon the occurrence of any event during performance of the Work that Settling Defendant is required to report pursuant to Section 103 of CERCLA, 42 U.S.C. § 9603, or Section 304 of the Emergency Planning and Community Right-to-Know Act (EPCRA), 42 U.S.C. § 11004, Settling Defendant shall, within 24 hours of the onset of such event, orally notify the EPA Project Manager, or, in the event that the EPA Project Manager is unavailable, the Emergency Response Section, Region 8, United States Environmental Protection Agency [Telephone No. (303) 293-1788].  The Settling Defendant shall also notify the State Eureka Mills Superfund Site Project Manager, either orally or by fax [Fax No. (801) 536-4242]. These reporting requirements are in addition to the reporting required by CERCLA Section 103 or EPCRA Section 304.

34.     Within twenty (20) days of the onset of an event referenced in Paragraph 33, Settling Defendant shall furnish to EPA and the State by first class and electronic mail, a written report, signed by the Settling Defendant's Project Manager, setting forth the events that occurred and the measures taken, and to be taken, in response thereto.  Within thirty (30) days of the conclusion of such an event, Settling Defendant shall submit a report setting forth all actions taken in response thereto.

35.     Settling Defendant shall submit, in electronic form, copies of all plans, reports, and data required by the Consent Decree or RAWP to EPA and the State in accordance with the schedules set forth in the RAWP.  All reports exceeding fifty (50) pages in length and final reports shall also be submitted in hard copy format.

36.     All reports and other documents submitted by Settling Defendant to EPA and the State (other than the monthly progress reports referred to above) which purport to document Settling Defendant's compliance with the terms of this Consent Decree shall be signed by an authorized representative of the Settling Defendant.

## XI. <u>EPA APPROVAL OF PLANS AND OTHER SUBMISSIONS</u>

37.     After review of any plan, report or other item that is required to be submitted for approval pursuant to this Consent Decree, EPA shall: (a) approve, in whole or in part, the submission; (b) approve the submission upon specified conditions; (c) modify the submission to cure the deficiencies; (d) disapprove, in whole or in part, the submission, directing that the Settling Defendant modify the submission; or (e) any combination of the above.  However, EPA shall not modify a submission without first providing Settling Defendant at least one notice of deficiency and an opportunity to cure within fifteen (15) days, except where to do so would cause serious disruption to the Work or where previous submission(s) have been disapproved

due to material defects and the deficiencies in the submission under consideration indicate a bad faith lack of effort to submit an acceptable deliverable.

38.    In the event of approval, approval upon conditions, or modification by EPA, pursuant to Paragraph 37, Settling Defendant shall proceed to take any action required by the plan, report, or other item, as approved or modified by EPA subject only to its right to invoke the Dispute Resolution procedures set forth in Section XIX (Dispute Resolution) with respect to the modifications or conditions made by EPA.  In the event that EPA modifies the submission to cure the deficiencies pursuant to Paragraph 37(c) and the submission has a material defect, EPA retains its right to seek stipulated penalties, as provided in Section XX (Stipulated Penalties).

Resubmission of Plans.

39.    Upon receipt of a notice of disapproval pursuant to Paragraph 37(d), Settling Defendant shall, within fifteen (15) days or such longer time as specified by EPA in such notice, correct the deficiencies and resubmit the plan, report, or other item to EPA, for EPA's approval. Any stipulated penalties applicable to the submission, as provided in Section XX (Stipulated Penalties), shall accrue during the fifteen (15) day period or otherwise specified period but shall not be payable unless the resubmission is disapproved or modified due to a material defect as provided in Paragraphs 37 and 38.

40.    Notwithstanding the receipt of a notice of disapproval pursuant to Paragraph 37(d), Settling Defendant shall proceed, at the direction of EPA, to take any action required by any non-deficient portion of the submission.  Implementation of any non-deficient portion of a submission shall not relieve Settling Defendant of any liability for stipulated penalties under Section XX (Stipulated Penalties).

41.     In the event that a resubmitted plan, report or other item, or portion thereof, is disapproved by EPA, EPA may again require the Settling Defendant to correct the deficiencies, in accordance with Paragraphs 37 - 39.  EPA also retains the right to modify or develop the plan, report or other item.   Settling Defendant shall implement any such plan, report, or item as modified or developed by EPA, subject only to its right to invoke the procedures set forth in Section XIX (Dispute Resolution).

42.     If upon resubmission, a plan, report, or item is disapproved or modified by EPA due to a material defect, Settling Defendant shall be deemed to have failed to submit such plan, report, or item timely and adequately unless the Settling Defendant invokes the dispute resolution procedures set forth in Section XIX (Dispute Resolution) and EPA's action is overturned pursuant to that Section.  The provisions of Section XIX (Dispute Resolution) and Section XX (Stipulated Penalties) shall govern the implementation of the Work and accrual and payment of any stipulated penalties during dispute resolution.

43.     All plans, reports, and other items required to be submitted to EPA under this Consent Decree shall, upon approval or modification by EPA, be enforceable under this Consent Decree.  In the event EPA approves or modifies a portion of a plan, report, or other item required to be submitted to EPA under this Consent Decree, the approved or modified portion shall be enforceable under this Consent Decree.

## XII.  PROJECT MANAGERS

44.     Settling Defendant, the State, and EPA have already designated their respective Project Managers for the Site, the names addresses and telephone numbers of which are noted in Section XXVI (Notices and Submissions).  If a Project Manager initially designated is changed, the identity of the successor will be given to the other Party and the State at least five (5)

working days before the change occurs, unless impracticable, but in no event later than the actual day the change is made.  Any successor to the Settling Defendant's Project Manager shall be subject to disapproval by EPA and shall have the technical expertise sufficient to adequately oversee all aspects of the Work.  The Settling Defendant's Project Manager shall not be an attorney for the Settling Defendant in this matter.  The Settling Defendant's Project Manager may assign other representatives, including other contractors, to serve as a Site representative for oversight of performance of daily operations during the performance of the Work.

45.     Plaintiff may designate other representatives, including, but not limited to, EPA and State employees, and Federal and State contractors and consultants, to observe and monitor the progress of any activity undertaken pursuant to this Consent Decree.  EPA's Project Manager shall have the authority lawfully vested in a Remedial Project Manager ("RPM") and an On-Scene Coordinator ("OSC") by the National Contingency Plan, 40 C.F.R. Part 300.  In addition, EPA's Project Manager shall have authority, consistent with the National Contingency Plan, to halt any Work required by this Consent Decree and to take any necessary response action when he or she determines that conditions at the Site constitute an emergency situation or may present an immediate threat to public health or welfare or the environment due to the release or threatened release of Waste Material.

### XIII.  ASSURANCE OF ABILITY TO COMPLETE WORK

46.     Within thirty (30) days of the Effective Date of this Consent Decree, Settling Defendant shall establish and maintain financial security in the amount equal to the combined value of the UEG Remedial Action (Paragraphs 14 - 17, supra) and the provision of Quarry Material (Paragraphs 18 - 19, supra) in one or more of the following forms:

      a.     A surety bond;

      b.     One or more irrevocable letters of credit;

      c.     A trust fund;

      d.     A guarantee by one or more parent corporations, subsidiaries, or affiliates, or by one or more unrelated corporations that have a substantial business relationship with the Settling Defendant; or

      e.     A demonstration that the Settling Defendant satisfies the requirements of 40 C.F.R. § 264.143(f).

47.     If the Settling Defendant seeks to demonstrate the ability to complete the UEG Remedial Action and the provision of Quarry Material through a guarantee by a third party pursuant to Paragraph 46 d. of this Consent Decree, Settling Defendant shall submit to EPA documents demonstrating that the guarantor satisfies the requirements of 40 C.F.R. § 264.143(f). If Settling Defendant seeks to demonstrate its ability to complete the UEG Remedial Action and the provision of Quarry Material by means of the financial test or the corporate guarantee pursuant to Paragraph 46 d. or e., it shall resubmit sworn statements to EPA conveying the information required by 40 C.F.R. § 264.143(f) annually, on the anniversary of the Effective Date of this Consent Decree.  In the event that EPA determines at any time that the financial assurances provided pursuant to this Section are inadequate, Settling Defendant shall, within thirty (30) days of receipt of notice of EPA's determination, obtain and present to EPA, for EPA's approval, one of the other forms of financial assurance listed in Paragraph 46 of this Consent Decree.  Settling Defendant's inability to demonstrate financial ability to complete the UEG Remedial Action and the provision of Quarry Material shall not excuse performance of any activities required under this Consent Decree.

48.     If Settling Defendant can show that the estimated cost to complete any unfinished component of the UEG Remedial Action or unfulfilled requirement under the provision of Quarry Material has diminished below the amount set forth in Paragraph 46 after the Effective Date of this Consent Decree, Settling Defendant may at any time agreed to by the Parties, reduce the amount of the financial security provided under this Section to the estimated cost of the unfinished component(s) or unfulfilled requirement(s) remaining to be performed. Settling Defendant shall submit a proposal for such reduction to EPA in accordance with the requirements of this Section, and may reduce the amount of the security upon approval by EPA. In the event of a dispute, Settling Defendant may reduce the amount of the security in accordance with the final administrative or judicial decision resolving the dispute.

49.     Settling Defendant may change the form of financial assurance provided under this Section at any time, upon notice to EPA and the State, and approval by EPA, provided that the new form of assurance meets the requirements of this Section. In the event of a dispute, Settling Defendant may change the form of the financial assurance only in accordance with the final administrative or judicial decision resolving the dispute.

## XIV.  CERTIFICATION OF COMPLETION

Completion of the Remedial Action.

50.     Within ninety (90) days after Settling Defendant concludes that the Work has been fully performed and the Performance Standards have been attained, it shall schedule and conduct a pre-certification inspection to be attended by EPA. If, after the pre-certification inspection, the Settling Defendant still believes that the Work has been fully performed and the Performance Standards have been attained, it shall submit to EPA and the State, for EPA's approval a written final report ("Final Report") prepared by a registered professional engineer,

35

requesting certification pursuant to Section XI (EPA Approval of Plans and Other Submissions) within thirty (30) days of the inspection. The Final Report shall be submitted electronically and in hard copy format. In the Final Report, a registered professional engineer and the Settling Defendant's Project Manager shall state that the UEG Remedial Action has been completed in full satisfaction of the requirements of this Consent Decree. The written Final Report shall include as-built drawings signed and stamped by a professional engineer. The Final Report shall contain the following statement, signed by a responsible corporate official of the Settling Defendant or the Settling Defendant's Project Manager:

> To the best of my knowledge, after thorough investigation, I certify that the information contained in or accompanying this submission is true, accurate and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

51.     If, after completion of the pre-certification inspection and receipt and review of the written Final Report, EPA determines that the Work or any portion thereof has not been completed in accordance with this Consent Decree or that the Performance Standards have not been achieved, EPA will notify Settling Defendant in writing of the activities that must be undertaken by Settling Defendant pursuant to this Consent Decree to complete the Work and achieve the Performance Standards, provided, however, that EPA may only require Settling Defendant to perform such activities pursuant to this Paragraph to the extent that such activities are consistent with the "scope of the remedy selected in the ROD," as that term is defined in Paragraph 15. EPA will set forth in the notice a schedule for performance of such activities consistent with the Consent Decree and the RAWP or require the Settling Defendant to submit a schedule to EPA, for approval by EPA pursuant to Section XI (EPA Approval of Plans and Other Submissions). Settling Defendant shall perform all activities described in the notice in

accordance with the specifications and schedules established pursuant to this Paragraph, subject to its right to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution).

52.    If EPA concludes, based on the initial or any subsequent report requesting Certification of Completion, that the Work has been performed in accordance with this Consent Decree and that the Performance Standards have been achieved, EPA will so certify in writing to Settling Defendant. This certification shall constitute the Certification of Completion of the Work for purposes of this Consent Decree.  Certification of Completion of the Work shall not affect Settling Defendant's remaining obligations under this Consent Decree.

## XV.  EMERGENCY RESPONSE

53.    In the event of any action or occurrence during the performance of the Work which causes or threatens a release of Waste Material from the Site that constitutes an emergency situation or that may present an immediate threat to public health or welfare or the environment, Settling Defendant shall, subject to Paragraph 54, immediately take all appropriate action to prevent, abate, or minimize such release or threat of release, and shall immediately notify the EPA's Project Manager, or, if the Project Manager is unavailable, telephone EPA's response line at (303) 293-1788.  If neither of these persons is available, the Settling Defendant shall notify the EPA Emergency Response Program, Region 8.  The Settling Defendant shall also notify the State Eureka Mills Superfund Site Project Manager, either orally or by fax [Fax No. (801) 536-4242].  Settling Defendant shall take such actions in consultation with EPA's Project Manager or other available authorized EPA officer and in accordance with all applicable provisions of the Health and Safety Plans, the Contingency Plans, and any other applicable plans or documents developed pursuant to the RAWP.  In the event that Settling Defendant fails to

take appropriate response action as required by this Section, and EPA takes such action instead, Settling Defendant shall reimburse EPA all costs of the response action not inconsistent with the NCP pursuant to Section XVI (Payments for Response Costs).

54.    Nothing in the preceding Paragraph or in this Consent Decree shall be deemed to limit any authority of the United States:  (a) to take all appropriate action to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Site, or (b) to direct or order such action, or seek an order from the Court, to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Site, subject to Section XXI (Covenants Not to Sue and Reservations by Plaintiff).

## XVI. PAYMENTS FOR RESPONSE COSTS

55.    Within thirty (30) days of the Effective Date, Settling Defendant shall pay to EPA two hundred and seventy thousand, six hundred and ninety dollars ($270,690.00) in payment for Past and Future Response Costs.  Payment shall be made by FedWire Electronic Funds Transfer ("EFT") to the United States Department of Justice account in accordance with current EFT procedures, referencing EPA Site/Spill ID # 08-CF, and DOJ Case Number 90-11-3-07993/4. Payment shall be made in accordance with instructions provided to the Settling Defendant by the Financial Litigation Unit of the United States Attorney's Office for the District of Utah following the Effective Date of the Consent Decree.  Any payments received by the Department of Justice after 4:00 p.m. (Eastern Time) will be credited on the next business day.  At the time of payment, Settling Defendant shall send notice that payment has been made to the United States, to EPA, EPA's Regional Financial Management Officer, and the State in accordance with Section XXVI (Notices and Submissions).

56.     The total amount to be paid by Settling Defendant pursuant to Paragraph 55 shall be deposited in the Eureka Mills Site Special Account within the EPA Hazardous Substance Superfund to be retained and used to conduct or finance response actions at or in connection with the Site, or, if no longer required for Site specific uses, to be transferred by EPA to the EPA Hazardous Substance Superfund.

57.     In the event that the payments required by Paragraph 55 are not made within thirty (30) days from the Effective Date, Settling Defendant shall pay Interest on the unpaid balance.  The Interest to be paid under this Paragraph shall begin to accrue on the Effective Date and continue to accrue through the date of the Settling Defendant's full payment.  Payments of Interest made under this Paragraph shall be in addition to such other remedies or sanctions available to Plaintiff by virtue of Settling Defendant's failure to make timely payments under this Section including, but not limited to, payment of stipulated penalties pursuant to Section XX of this Decree (Stipulated Penalties).

## XVII.  INDEMNIFICATION AND INSURANCE

58.     The United States does not assume any liability by entering into this Consent Decree or by virtue of any designation of Settling Defendant as EPA's authorized representative under Section 104(e) of CERCLA, 42 U.S.C. § 9604(e).  Settling Defendant shall indemnify, save and hold harmless the United States and its officials, agents, employees, contractors, subcontractors, or representatives for or from any and all claims or causes of action arising from, or on account of, negligent or other wrongful acts or omissions of Settling Defendant, its officers, directors, employees, agents, contractors, subcontractors, and any persons acting on its behalf or under its control, in carrying out activities pursuant to this Consent Decree, including, but not limited to, any claims arising from any designation of Settling Defendant as EPA's

39

authorized representative under Section 104(e) of CERCLA, 42 U.S.C. § 9604(e).  Further, the Settling Defendant agrees to pay the United States all costs it incurs including, but not limited to, attorneys fees and other expenses of litigation and settlement arising from, or on account of, claims made against the United States based on negligent or other wrongful acts or omissions of Settling Defendant, its officers, directors, employees, agents, contractors, subcontractors, and any persons acting on its behalf or under its control, in carrying out activities pursuant to this Consent Decree.  The United States shall not be held out as a party to any contract entered into by or on behalf of Settling Defendant in carrying out activities pursuant to this Consent Decree. Neither the Settling Defendant nor any such contractor shall be considered an agent of the United States.

59.    The United States shall give Settling Defendant notice of any claim for which the United States plans to seek indemnification pursuant to Paragraph 58 and shall consult with Settling Defendant prior to settling such claim.

60.    Settling Defendant waives all claims against the United States for damages or reimbursement or for set-off of any payments made or to be made to the United States, arising from or on account of any contract, agreement, or arrangement between the Settling Defendant and any person for performance of Work on or relating to the Site, including, but not limited to, claims on account of construction delays.  In addition, Settling Defendant shall indemnify and hold harmless the United States with respect to any and all claims for damages or reimbursement arising from or on account of any contract, agreement, or arrangement between Settling Defendant and any person for performance of Work on or relating to the Site, including, but not limited to, claims on account of construction delays.

61.     Prior to the lodging of this Consent Decree, Settling Defendant provided the United States with information that satisfied the United States as to Settling Defendant's financial resources and its ability to provide comprehensive general liability insurance with limits of one million dollars, combined single limit, and automobile liability insurance with limits of one million dollars, combined single limit, naming the United States as an additional insured. In addition, until Certification of Completion pursuant to Section XIV above, Settling Defendant shall satisfy, or shall ensure that its contractors or subcontractors satisfy, all applicable laws and regulations regarding the provision of worker's compensation insurance for all persons performing the Work on behalf of Settling Defendant in furtherance of this Consent Decree. Prior to commencement of the Work under this Consent Decree, Settling Defendant shall provide to EPA certificates of such insurance and a copy of each insurance policy. Until Certification of Completion pursuant to Section XIV above, Settling Defendant shall resubmit such certificates and copies of policies on each anniversary of the Effective Date of this Consent Decree. If Settling Defendant demonstrates by evidence satisfactory to EPA that any contractor or subcontractor maintains insurance equivalent to that described above, or insurance covering the same risks but in a lesser amount, then, with respect to that contractor or subcontractor, Settling Defendant need provide only assurance for the equivalent of that portion of the insurance described above which is not maintained by the contractor or subcontractor. The United States shall be named as an additional insured on contractor and subcontractor insurance.

## XVIII. FORCE MAJEURE

62.     "Force Majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of the Settling Defendant, of any entity controlled by Settling Defendant, or of Settling Defendant's contractors, that delays or prevents the

performance of any obligation under this Consent Decree despite Settling Defendant's best efforts to fulfill the obligation.   The requirement that the Settling Defendant exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any potential force majeure event as it is occurring and following the potential force majeure event, such that the delay is minimized to the greatest extent possible.   Force Majeure does not include financial inability to complete the Work or a failure to attain the Performance Standards.

      63.    If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a Force Majeure event, the Settling Defendant shall notify orally EPA's Project Manager or, in his or her absence, the Director of the Superfund Remedial Response Program, Office of Ecosystems Protection and Remediation, EPA Region 8, Dale Vodehnal, at (303) 312-6761 within twenty-four (24) hours of when Settling Defendant first knew that the event might cause a delay.  Within seven (7) days thereafter, Settling Defendant shall provide in writing to EPA and the State: an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Settling Defendant's rationale for attributing such delay to a Force Majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of the Settling Defendant, such event may cause or contribute to an endangerment to public health, welfare, or the environment.   The Settling Defendant shall include with any notice, all available documentation supporting its claim that the delay was attributable to a Force Majeure.  Failure to comply with the above requirements shall preclude Settling Defendant from asserting any claim of Force Majeure for that event for the

period of time of such failure to comply, and for any additional delay caused by such failure. Settling Defendant shall be deemed to know of any circumstance of which Settling Defendant, any entity controlled by Settling Defendant, or Settling Defendant's contractors knew or should have known.

64.     If EPA agrees that the delay or anticipated delay is attributable to a Force Majeure event, the time for performance of the obligations under this Consent Decree that are affected by the Force Majeure event will be extended by EPA.  EPA will notify the Settling Defendant in writing of the length of the extension, if any, for performance of the obligations affected by the Force Majeure event. An extension of the time for performance of the obligations affected by the Force Majeure event shall not of itself, however, extend the time for performance of any other obligation.  If EPA does not agree that the delay or anticipated delay has been or will be caused by a Force Majeure event, EPA will notify the Settling Defendant in writing of its decision.

65.     If the Settling Defendant elects to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution), it shall do so no later than fifteen (15) days after receipt of EPA's notice.  In any such proceeding, Settling Defendant shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a Force Majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Settling Defendant complied with the requirements of Paragraphs 62 - 64, above.  If Settling Defendant carries this burden, the delay at issue shall be deemed not to be a violation by Settling Defendant of the affected obligation of this Consent Decree.

## XIX.  DISPUTE RESOLUTION

66.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree.  However, the procedures set forth in this Section shall not apply to actions by the United States to enforce obligations of the Settling Defendant that have not been disputed in accordance with this Section.  Copies of any such notice shall also be provided to the State.

Informal Dispute Resolution.

67.     Any dispute which arises under or with respect to this Consent Decree shall in the first instance be the subject of informal negotiations between the Parties.   The period for informal negotiations shall not exceed twenty (20) days from the time the dispute arises, unless it is modified by written agreement of the Parties.  The dispute shall be considered to have arisen when one Party sends the other Party a written Notice of Dispute.

Statements of Position.

68.     In the event that the Parties cannot resolve a dispute by informal negotiations under the preceding Paragraph, then the position advanced by EPA shall be considered binding unless, within fifteen (15) days after the conclusion of the informal negotiation period, Settling Defendant invokes the formal dispute resolution procedures of this Section by serving on the United States a written Statement of Position on the matter in dispute, including, but not limited to, any factual data, analysis or opinion supporting that position and any supporting documentation relied upon by the Settling Defendant.  The Statement of Position shall specify the Settling Defendant's position as to whether formal dispute resolution should proceed under

44

Paragraph 69 or Paragraph 70.   A copy of the Statement of Position shall be provided simultaneously to the State.

      a.     Within thirty (30) days after receipt of Settling Defendant's Statement of Position, EPA will serve on Settling Defendant its Statement of Position, including, but not limited to, any factual data, analysis, or opinion supporting that position and all supporting documentation relied upon by EPA.   EPA's Statement of Position shall include a statement as to whether formal dispute resolution should proceed under Paragraph 69 or 70.   Within fifteen (15) days after receipt of EPA's Statement of Position, Settling Defendant may submit a Reply.   A copy of any such Reply shall be provided simultaneously to the State.

      b.     If there is disagreement between Parties as to whether dispute resolution should proceed under Paragraph 69 or 70, the Parties shall follow the procedures set forth in the Paragraph determined by EPA to be applicable.   However, if the Settling Defendant ultimately appeals to the Court to resolve the dispute, the Court shall determine which Paragraph is applicable in accordance with the standards of applicability set forth in Paragraphs 69 and 70.

Formal Dispute Resolution.

69.     Formal dispute resolution for disputes pertaining to the selection or adequacy of any response action and all other disputes that are accorded review on the administrative record under applicable principles of administrative law shall be conducted pursuant to the procedures set forth in this Paragraph. For purposes of this Paragraph, the adequacy of any response action includes, without limitation the adequacy or appropriateness of plans, procedures to implement plans, or any other items requiring approval by EPA under this Consent Decree, and the

adequacy of the performance of response actions taken pursuant to this Consent Decree. Nothing in this Consent Decree shall be construed to allow any dispute by Settling Defendant regarding the validity of the ROD's provisions.

   a.      An administrative record of the dispute shall be maintained by EPA and shall contain all statements of position, including supporting documentation, submitted pursuant to this Section.  Where appropriate, EPA may allow submission of supplemental statements of position by the Parties.

   b.      The Assistant Regional Administrator of the Office of Ecosystems Protection and Remediation, EPA Region 8, will issue a final administrative decision resolving the dispute based on the administrative record described in Paragraph 69.a. This decision shall be binding upon the Settling Defendant, subject only to the right to seek judicial review pursuant to Paragraph 69.c and d.

   c.      Any administrative decision made by EPA pursuant to Paragraph 69.b. shall be reviewable by this Court, provided that a motion for judicial review of the decision is filed by the Settling Defendant with the Court and served on all Parties within twenty (20) days of receipt of EPA's decision.  The motion shall include a description of the matter in dispute, the efforts made by the Parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of this Consent Decree.  The United States may file a response to Settling Defendant's motion.

   d.      In proceedings on any dispute governed by this Paragraph, Settling Defendant shall have the burden of demonstrating that the decision of the Assistant Regional Administrator of the Office of Ecosystems Protection and Remediation is

arbitrary and capricious or otherwise not in accordance with law. Judicial review of EPA's decision shall be on the administrative record compiled pursuant to Paragraph 69.a.

70.    Formal dispute resolution for disputes that neither pertain to the selection or adequacy of any response action nor are otherwise accorded review on the administrative record under applicable principles of administrative law, shall be governed by this Paragraph.

a.    Following receipt of Settling Defendant's Statement of Position submitted pursuant to Paragraph 68, the Assistant Regional Administrator of the Office of Ecosystems Protection and Remediation, EPA Region 8, will issue a final decision resolving the dispute. The Office of Ecosystems Protection and Remediation Assistant Regional Administrator's decision shall be binding on the Settling Defendant unless, within ten (10) days of receipt of the decision, the Settling Defendant files with the Court and serves on the United States a motion for judicial review of the decision setting forth the matter in dispute, the efforts made by the Parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of the Consent Decree. The United States may file a response to Settling Defendant's motion.

b.    Notwithstanding Section I (Background) of this Consent Decree, judicial review of any dispute governed by this Paragraph shall be governed by applicable principles of law.

71.    The invocation of formal dispute resolution procedures under this Section shall not extend, postpone or affect in any way any obligation of the Settling Defendant under this Consent Decree, not directly in dispute, unless EPA or the Court agrees otherwise. Stipulated

penalties with respect to the disputed matter shall continue to accrue but payment shall be stayed pending resolution of the dispute.   Notwithstanding the stay of payment, stipulated penalties shall accrue from the first day of noncompliance with any applicable provision of this Consent Decree.  In the event that the Settling Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section XX (Stipulated Penalties).

## XX.  STIPULATED PENALTIES

72.     Settling Defendant shall be liable for stipulated penalties in the amounts set forth in Paragraphs 73 and 74 to the United States for failure to comply with the requirements of this Consent Decree specified below, unless excused under Section XVIII (Force Majeure). "Compliance" by Settling Defendant shall include completion of the Work under this Consent Decree or any work plan or other plan approved under this Consent Decree identified below in accordance with all applicable requirements of law, this Consent Decree, RAWP, and any plans or other documents approved by EPA pursuant to this Consent Decree and within the specified time schedules established by and approved under this Consent Decree.

Stipulated Penalty Amounts - Tier 1.

73.     The following stipulated penalties shall accrue per violation per day for any noncompliance identified in Paragraph 73.a.:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $12,000 | 1st through 14th day |
| $15,000 | 15th through 30th day |
| $ 20,000 | 31st day and beyond |

a.     Compliance Milestones.  Failure to comply with any of the requirements in Section VI (Performance of the Work by Settling Defendant), Section VII (Remedy Review), Section VIII (Quality Assurance, Sampling, and Data Analysis), Section IX (Access), Section

XIII (Assurance of Ability to Complete Work), Section XV (Emergency Response), and Section

XVI (Payment for Response Costs).

Stipulated Penalty Amounts - Tier 2.

74.     The following stipulated penalties shall accrue per violation per day for any

noncompliance identified in Paragraph 74.a.:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $2,500 | 1st through 14th day |
| $3,000 | 15th through 30th day |
| $5,000 | 31st day and beyond |

a.      Failure to comply with any of the requirements in Section X (Reporting

Requirements), Section XI (EPA Approval of Plans and Other Submissions), Section XII

(Project Managers), Section XIV (Certification of Completion), Section XVII (Indemnification

and Insurance), Section XXIV (Access to Information), Section XXVI (Notices and

Submissions), and Section XXX (Community Relations).

75.     In the event that EPA assumes performance of a portion or all of the Work

pursuant to Paragraph 90 of Section XXI (Covenants Not to Sue and Reservations by Plaintiff),

Settling Defendant shall, in addition to other remedies, be liable for a stipulated penalty in the

amount of $ 250,000.

76.     All penalties shall begin to accrue on the day after the complete performance is

due or the day a violation occurs, and shall continue to accrue through the final day of the

correction of the noncompliance or completion of the activity.  However, stipulated penalties

shall not accrue: (a) with respect to a deficient submission under Section XI (EPA Approval of

Plans and Other Submissions), during the period, if any, beginning on the thirty-first (31st) day

after EPA's receipt of such submission until the date that EPA notifies Settling Defendant of any deficiency; (b) with respect to a decision by the Assistant Regional Administrator for the Office of Ecosystems Protection and Remediation, EPA Region 8, under Paragraphs 66 - 70 of Section XIX (Dispute Resolution), during the period, if any, beginning on the twenty-first (21st) day after the date that Settling Defendant's reply to EPA's Statement of Position is received until the date that the Assistant Regional Administrator issues a final decision regarding such dispute; or (c) with respect to judicial review by this Court of any dispute under Section XIX (Dispute Resolution), during the period, if any, beginning on the thirty-first (31st) day after the Court's receipt of the final submission regarding the dispute until the date that the Court issues a final decision regarding such dispute.   Nothing herein shall prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

77.   Following EPA's determination that Settling Defendant has failed to comply with a requirement of this Consent Decree, EPA shall give Settling Defendant written notification of the same and describe the noncompliance.   EPA may send the Settling Defendant a written demand for the payment of the penalties.   However, penalties shall accrue as provided in the preceding Paragraph regardless of whether EPA has notified the Settling Defendant of a violation, provided that EPA does not unreasonably withhold or delay notice of such violation.

78.   All penalties accruing under this Section shall be due and payable to the United States within thirty (30) days of the Settling Defendant's receipt from EPA of a demand for payment of the penalties, unless Settling Defendant invokes the Dispute Resolution procedures under Section XIX (Dispute Resolution).   All payments to the United States under this Section shall be made payable to "U.S. EPA," shall indicate that the payment is for stipulated penalties and forwarded to one of the following addresses:

50

| Regular Mail: | Mellon Bank<br>Attn: Superfund Accounting<br>Lockbox 360859<br>Pittsburgh, PA 15251-6859 |
| --- | --- |
| Overnight Mail: | U.S. EPA, 360859<br>Mellon Client Service Center Rm 670<br>500 Ross Street<br>Pittsburgh, PA 15262-0001 |
| Wire Transfers: | Wire transfers must be sent directly to the Federal Reserve Bank in New York City with the following information:<br><br>ABA = 021030004<br>TREAS NYC/CTR/<br>BNF=/AC-68011008 |

79.    Payments shall reference the EPA Region and Site/Spill ID #08-CF, the DOJ Case Number 90-11-3-07993/4, and the name and address of the Settling Defendant.  Copies of check(s) paid pursuant to this Section, and any accompanying transmittal letter(s), shall be sent to the United States as provided in Section XXVI (Notices and Submissions).

80.    The payment of penalties shall not alter in any way Settling Defendant's obligation to complete the performance of the Work required under this Consent Decree.

81.    Penalties shall continue to accrue as provided in Paragraph 71 during any dispute resolution period, but need not be paid until the following:

a.    If the dispute is resolved by agreement or by a decision of EPA that is not appealed to this Court, accrued penalties determined to be owing shall be paid to EPA within fifteen (15) days of the agreement or the receipt of EPA's decision or order;

b.    If the dispute is appealed to this Court and the United States prevails in whole or in part, Settling Defendant shall pay all accrued penalties determined by the Court to be owed to EPA within sixty (60) days of receipt of the Court's decision or order, except as provided in Subparagraph c below;

c.    If the District Court's decision is appealed by any Party, Settling Defendant shall pay all accrued penalties determined by the District Court to be owing to the United States into an interest-bearing escrow account within sixty (60) days of receipt of the Court's decision or order. Penalties shall be paid into this account as they continue to accrue, at least every sixty (60) days. Within fifteen (15) days of receipt of the final appellate court decision, the escrow agent shall pay the balance of the account to EPA or to Settling Defendant, whichever Party prevails.

82.    If Settling Defendant fails to pay stipulated penalties when due, the United States may institute proceedings to collect the penalties, as well as interest. Settling Defendant shall pay Interest on the unpaid balance, which shall begin to accrue on the date of demand made pursuant to Paragraph 77.

83.    Nothing in this Consent Decree shall be construed as prohibiting, altering, or in any way limiting the ability of the United States to seek any other remedies or sanctions available by virtue of Settling Defendant's violation of this Consent Decree or of the statutes and regulations upon which it is based, including, but not limited to, penalties pursuant to Section 122(l) of CERCLA, 42 U.S.C. § 9622(l), provided, however, that the United States shall not seek civil penalties pursuant to Section 122(l) of CERCLA, 42 U.S.C. § 9622(l), for any violation for which a stipulated penalty is provided herein, except in the case of a willful violation of the Consent Decree.

84.    Notwithstanding any other provision of this Section, the United States may, in its unreviewable discretion, waive any portion of stipulated penalties that have accrued pursuant to this Consent Decree.

## XXI.  **COVENANTS NOT TO SUE AND RESERVATIONS BY PLAINTIFF**

United States' Covenant Not To Sue.

85.    In consideration of the actions that will be performed and the payments that will be made by the Settling Defendant under the terms of the Consent Decree, and except as specifically provided in Paragraphs 86 - 90 of this Section, the United States covenants not to sue or to take administrative action against Settling Defendant pursuant to Sections 106, 107(a), and 113 of CERCLA, 42 U.S.C. §§ 9606, 9607(a), and 9613, and Sections 3004(u) and (v), 3008 and 7003 of RCRA, 42 U.S.C. §§ 6924(u) and (v), 6928, and 6973 relating to the Site.  This covenant extends to Settling Defendant's officers, directors, and employees but only to the extent that the liability of those officers, directors and employees arises solely from their status as such and from the same nucleus of facts that gave rise to the allegations of Settling Defendant's liability made in the United States' complaint which are resolved under this Consent Decree.  The foregoing covenant also extends to Settling Defendant's successors-in-interest but only to the extent that the liability of those entities arises solely from their status as such and from the same nucleus of facts that gave rise to the allegations of Settling Defendant's liability made in the United States' complaint which are resolved under this Consent Decree.  Except with respect to completion of the Work, these covenants not to sue shall take effect upon the receipt by EPA of the payments required by Paragraph 55 of Section XVI (Payments for Response Costs).  With respect to completion of the Work, these covenants not to sue shall take effect upon Certification of Completion of the Work by EPA pursuant to Paragraph 52 of Section XIV (Certification of Completion).  These covenants not to sue are conditioned upon the satisfactory performance by Settling Defendant of its obligations under this Consent Decree.  These covenants not to sue extend only to the Settling Defendant, and its officers, directors, and employees, to the extent

that the liability of such officers, directors and employees arises solely from their status as officers, directors, and employees, and do not extend to any other person.

United States' Pre-Certification Reservations.

86.    Notwithstanding any other provision of this Consent Decree, the United States reserves, and this Consent Decree is without prejudice to, the right to institute proceedings in this action or in a new action, or to issue an administrative order seeking to compel Settling Defendant to perform further response actions relating to the UEG Remedial Action and property identified in Appendix F, or to reimburse the United States for additional costs of response relating to the UEG Remedial Action Area and property identified in Appendix F if, prior to Certification of Completion of the Work:

    a.    conditions at the Site, previously unknown to EPA, are discovered, or

    b.    information, previously unknown to EPA, in whole or in part, is received and EPA determines that these previously unknown conditions or information together with any other relevant information indicate that the response actions set forth in the ROD are not protective of human health or the environment.

United States' Post-Certification Reservations

87.    Notwithstanding any other provision of this Consent Decree, the United States reserves, and this Consent Decree is without prejudice to, the right to institute proceedings in this action or in a new action, or to issue an administrative order seeking to compel Settling Defendant to perform further response actions relating to the UEG Remedial Action Area and property identified in Appendix F, or to reimburse the United States for additional costs of response relating to the UEG Remedial Action Area and property identified in Appendix F if, subsequent to Certification of Completion of the Work:

      a.     conditions at the Site, previously unknown to EPA, are discovered, or

      b.     information, previously unknown to EPA, in whole or in part, is received and EPA determines that these previously unknown conditions or this information together with other relevant information indicate that the response actions set forth in the ROD are not protective of human health or the environment.

88.    For purposes of Paragraph 86, the information and the conditions known to EPA shall include only that information and those conditions known to EPA as of the date of lodging of this Consent pursuant to Section XXXII as contained in: (a) the Record of Decision for the Site; (b) the administrative record supporting the Record of Decision; or (c) EPA's site file for the Eureka Mills Site maintained by the EPA Region 8 Superfund Records Center.  For purposes of Paragraph 87, the information and the conditions known to EPA shall include only that information and those conditions known to EPA as of the date of Certification of Completion of the Remedial Action and contained in: (a) the Record of Decision for the Site; (b) the administrative record supporting the Record of Decision; (c) the post-Record of Decision administrative record; (d) EPA's site file for the Eureka Mills Site maintained by the EPA Region 8 Superfund Records Center; or (e) in any information received by EPA pursuant to the requirements of this Consent Decree prior to Certification of Completion of the Remedial Action.

    United States' General Reservations of Rights.

89.    The United States reserves, and this Consent Decree is without prejudice to, all rights against Settling Defendant with respect to all matters not expressly included within the United States' covenant not to sue.  Notwithstanding any other provision of this Consent Decree, the United States reserves all rights against Settling Defendant with respect to:

a.      claims based on a failure by Settling Defendant to meet a requirement of this Consent Decree;

b.      liability arising from the past, present, or future disposal, release, or threat of release of Waste Material outside of the Site;

c.      liability based upon the Settling Defendant's ownership or operation of the Site, or upon the Settling Defendant's transportation, treatment, storage, or disposal, or the arrangement for the transportation, treatment, storage, or disposal of Waste Material at or in connection with the Site, other than as provided in the ROD, the Work, or otherwise ordered by EPA, after signature of this Consent Decree by the Settling Defendant;

d.      liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

e.      criminal liability;

f.      liability for violations of federal or state law which occur during or after implementation of the UEG Remedial Action; and

g.      liability, prior to Certification of Completion of the Work, for additional response actions for the UEG Remedial Action Area and property identified in Appendix F that EPA determines are necessary to achieve Performance Standards, but that cannot be required pursuant to Paragraph 15.

Work Takeover.

90.      In the event EPA determines that Settling Defendant has ceased implementation of any portion of the Work, is seriously or repeatedly deficient or late in its performance of the Work, or is implementing the Work in a manner which may cause an endangerment to human

health or the environment, EPA may assume the performance of all or any portions of the Work as EPA determines necessary. Settling Defendant may invoke the procedures set forth in Section XIX (Dispute Resolution), Paragraph 69, to dispute EPA's determination that takeover of the Work is warranted under this Paragraph. Costs incurred by the United States in performing the Work pursuant to this Paragraph shall be paid as set forth in the following Subparagraphs.

      a.      Settling Defendant shall pay to EPA all costs of the Work taken over under Paragraph 90 not inconsistent with the National Contingency Plan. On a periodic basis the United States will send Settling Defendant a bill requiring payment that includes a cost summary. Settling Defendant shall make all payments in accordance with the payment instructions in Paragraph 55 within thirty (30) days of Settling Defendant's receipt of each bill requiring payment, except as otherwise provided in Paragraph90.b.

      b.      Settling Defendant may contest payment required under Paragraph 90 if it determines that the United States has made an accounting error or if it alleges that a cost item that is included represents costs that are inconsistent with the NCP. Such objection shall be made in writing within thirty (30) days of receipt of the bill and must be sent to the United States pursuant to Section XXVI (Notices and Submissions). Any such objection shall specifically identify the contested costs and the basis for objection. In the event of an objection, the Settling Defendant shall within the thirty (30) day period pay all uncontested costs to the United States in the manner described in Paragraph 55. Simultaneously, the Settling Defendant shall establish an interest-bearing escrow account in a federally-insured bank duly chartered in the State of Nebraska and remit to that escrow account funds equivalent to the amount of the contested costs. The Settling Defendant shall send to the United States, as provided in Section XXVI (Notices and

Submissions), a copy of the transmittal letter and check paying the uncontested costs, and a copy of the correspondence that establishes and funds the escrow account, including, but not limited to, information containing the identity of the bank and bank account under which the escrow account is established as well as a bank statement showing the initial balance of the escrow account. Simultaneously with establishment of the escrow account, the Settling Defendant shall initiate the Dispute Resolution procedures in Section XIX (Dispute Resolution). If the United States prevails in the dispute, within five (5) days of the resolution of the dispute, the Settling Defendant shall pay the sums due (with accrued Interest) to the United States in the manner described in Paragraph 55. If the Settling Defendant prevails concerning any aspect of the contested costs, the Settling Defendant shall pay that portion of the costs (plus associated accrued Interest) for which it did not prevail to the United States in the manner described in Paragraph 55. Any remaining balance in the escrow account shall be disbursed to the Settling Defendant. The dispute resolution procedures set forth in this Paragraph in conjunction with the procedures set forth in Section XIX (Dispute Resolution) shall be the exclusive mechanisms for resolving disputes regarding the Settling Defendant's obligation to reimburse the United States costs attributable to Work taken over.

      c.      In the event that the payments required by Subparagraph 90.a. are not made within thirty (30) days of the Settling Defendant's receipt of the bill, Settling Defendant shall pay Interest on the unpaid balance. The Interest on the costs shall begin to accrue on the date of the bill. The Interest shall accrue through the date of the Settling Defendant's payment. Payments of Interest made under this Paragraph shall be in addition to such other remedies or sanctions available to Plaintiff by virtue of Settling

Defendant's failure to perform the Work or make timely payments under this Paragraph including, but not limited to, payment of stipulated penalties pursuant to Section XX (Stipulated Penalties).  The Settling Defendant shall make all payments required by this Paragraph in the manner described in Paragraph 55.

91.    Notwithstanding any other provision of this Consent Decree, the United States retains all authority and reserves all rights to take any and all response actions authorized by law.

## XXII. COVENANTS NOT TO SUE AND RESERVATIONS BY SETTLING DEFENDANT

Settling Defendant's Covenant Not to Sue.

92.    Subject to the reservations in Paragraphs 93 and 94, Settling Defendant hereby covenants not to sue and agrees not to assert any claims or causes of action against the United States with respect to the Site or this Consent Decree, including, but not limited to:

a.    any direct or indirect claim for reimbursement from the Hazardous Substance Superfund (established pursuant to the Internal Revenue Code, 26 U.S.C. § 9507) through Sections 106(b)(2), 107, 111, 112, or 113 of CERCLA, 42 U.S.C. §§ 9606(b)(2), 9607, 9611, 9612, or 9613 or any other provision of law;

b.    any claims against the United States, including any department, agency or instrumentality of the United States under Sections 107 or 113 of CERCLA,42 U.S.C. §§ 9607 or 9613, related to the Site; or

c.    any claims arising out of response actions at or in connection with the Site, including any claim under the United States Constitution, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, as amended, or at common law.

93.     These covenants not to sue shall not apply in the event that the United States brings a cause of action or issues an order pursuant to the reservations set forth in Paragraphs 86 - 90 but only to the extent that Settling Defendant's claims arise from the same matters, transactions, or occurrences that are raised in or directly related to the United States' claims against Settling Defendant.

94.     The Settling Defendant reserves, and this Consent Decree is without prejudice to, claims against the United States, subject to the provisions of Chapter 171 of Title 28 of the United States Code, for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the United States while acting within the scope of his office or employment under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.  However, any such claim shall not include a claim for any damages caused, in whole or in part, by the act or omission of any person, including any contractor, who is not a federal employee as that term is defined in 28 U.S.C. § 2671; nor shall any such claim include a claim based on EPA's selection of response actions, or the oversight or approval of the Settling Defendant's plans or activities.  The foregoing applies only to claims which are brought pursuant to any statute other than CERCLA and for which the waiver of sovereign immunity is found in a statute other than CERCLA.  Settling Defendant further reserves all defenses under any federal, state or local statute, regulation, or common law for any claim, endangerment, nuisance, response, removal, remedial or other costs or damages incurred or to be incurred by the United States, the State, or other entities or persons as a result of the transactions or occurrences alleged in the United States' complaint in the above captioned action.

95.     Nothing in this Consent Decree shall be deemed to constitute preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. § 300.700(d).

Waiver of Claims Against De Micromis Parties.

96.     Settling Defendant agrees not to assert any claims and to waive all CERCLA and RCRA claims or causes of action that it may have for all matters relating to the Site, including for contribution, against any person where the person's liability to Settling Defendant with respect to the Site is based solely on having arranged for disposal or treatment, or for transport for disposal or treatment, of hazardous substances at the Site, or having accepted for transport for disposal or treatment of hazardous substances at the Site, if the materials contributed by such person to the Site containing hazardous substances did not exceed the greater of (i) 0.002% of the total volume of waste at the Site, or (ii) 110 gallons of liquid materials or 200 pounds of solid materials.

        a.      This waiver shall not apply to any claim or cause of action against any person meeting the above criteria if EPA has determined that the materials contributed to the Site by such person contributed or could contribute significantly to the costs of response at the Site.  This waiver shall be void to the extent that the United States institutes a new action, or issues a new administrative order to Settling Defendant pursuant to the reservations contained in Paragraphs 86 - 90 of this Consent Decree.  This waiver also shall not apply with respect to any defense, claim, or cause of action that Settling Defendant may have against any person if such person asserts a claim or cause of action relating to the Site against Settling Defendant.

## XXIII.  EFFECT OF SETTLEMENT; CONTRIBUTION PROTECTION

97.     Nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree.  The preceding sentence shall not be construed to waive or nullify any rights that any person not a signatory to this Consent Decree may have under applicable law.  Except as provided in Paragraph 96 (Waiver of Claims Against De Micromis Parties), each of the Parties expressly reserves any and all rights (including, but not limited to, any right to contribution), defenses, claims, demands, and causes of action which each Party may have with respect to any matter, transaction, or occurrence relating in any way to the Site against any person not a Party hereto.

98.     The Parties agree, and by entering this Consent Decree this Court finds, that the Settling Defendant is entitled, as of the Effective Date, to protection from contribution actions or claims as provided by Section 113(f)(2), 42 U.S.C. § 9613(f)(2) of CERCLA for Matters Addressed in this Consent Decree.  The "Matters Addressed in this Consent Decree" are all response actions taken or to be taken and all response costs incurred or to be incurred by the United States or any other person with respect to the Site.  The Matters Addressed in this Consent Decree do not include those response costs or response actions for which the United States has reserved its rights under this Consent Decree (except for claims for failure to comply with this Decree), in the event that the United States asserts rights against Settling Defendant coming within the scope of such reservations.

99.     The Settling Defendant agrees that with respect to any suit or claim for contribution brought by it for matters related to this Consent Decree, it will notify the United States and the State in writing no later than sixty (60) days prior to the initiation of such suit or claim.

100.    The Settling Defendant also agrees that with respect to any suit or claim for contribution brought against it for matters related to this Consent Decree, it will notify in writing the United States and the State within ten (10) days of service of the complaint on it.  In addition, Settling Defendant shall notify the United States and the State within ten (10) days of service or receipt of any Motion for Summary Judgment and within ten (10) days of receipt of any order from a court setting a case for trial.

101.    In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, recovery of response costs, or other appropriate relief relating to the Site, Settling Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the enforceability of the covenants not to sue set forth in Section XXI (Covenants Not to Sue and Reservations by Plaintiff).

## XXIV. ACCESS TO INFORMATION

102.    Subject to the assertion of privilege claims in accordance with Paragraphs 103 and 104, Settling Defendant shall provide to EPA, upon request, copies of all documents and information within its possession or control or that of its contractors or agents relating to activities at the Site or to the implementation of this Consent Decree, including, but not limited to, sampling, analysis, chain of custody records, manifests, trucking logs, receipts, reports, sample traffic routing, correspondence, or other documents or information related to the Work. Settling Defendant shall also make available to EPA, for purposes of investigation, information gathering, or testimony, its employees, agents, or representatives with knowledge of relevant

facts concerning the performance of the Work subject to their right to counsel or any other right under State or federal law and any privilege recognized by federal or, if applicable, State law.

Business Confidential and Privileged Documents.

103.     Settling Defendant may assert business confidentiality claims covering part or all of the documents or information submitted to Plaintiff under this Consent Decree to the extent permitted by and in accordance with Section 104(e)(7) of CERCLA, 42 U.S.C. § 9604(e)(7), and 40 C.F.R. § 2.203(b). Documents or information determined to be confidential by EPA will be afforded the protection specified in 40 C.F.R. Part 2, Subpart B.  If no claim of confidentiality accompanies documents or information when they are submitted to EPA, or if EPA has notified Settling Defendant that the documents or information are not confidential under the standards of Section 104(e)(7) of CERCLA or 40 C.F.R. Part 2, Subpart B, the public may be given access to such documents or information without further notice to Settling Defendant.

104.     The Settling Defendant may assert that certain documents, records and other information are privileged under the attorney-client privilege, attorney work product privilege, or any other privilege recognized by federal or, if applicable, State law.  If the Settling Defendant asserts such a privilege in lieu of providing documents, it shall provide the Plaintiff with the following, if known:  (a) the title of the document, record, or information; (b) the date of the document, record, or information; (c) the name and title of the author of the document, record, or information; (d) the name and title of each addressee and recipient; (e) a description of the subject matter of the document, record, or information: and (f) the privilege asserted by Settling Defendant.  However, no documents, reports or other information created or generated pursuant to the requirements of the Consent Decree shall be withheld on the grounds that they are privileged.

105.    No claim of confidentiality shall be made with respect to any data required to be generated pursuant to the requirements of the Consent Decree, including, but not limited to, all sampling, analytical, monitoring, hydrogeologic, scientific, chemical, or engineering data, or any other documents or information evidencing conditions at or around the Site.

## XXV. RETENTION OF RECORDS

106.    Until ten (10) years after the Settling Defendant's receipt of EPA's notification pursuant to Paragraph 52 of Section XIV (Certification of Completion), Settling Defendant shall preserve and retain all non-identical copies of records and documents (including records or documents in electronic form) now in its possession or control or which come into its possession or control that relate in any manner to its potential liability under CERCLA with respect to the Site.  Settling Defendant must retain, in addition, all documents and records that relate to the liability of any other person under CERCLA with respect to the Site.  Settling Defendant shall also retain, and instruct its contractors and agents to preserve, for the same period of time specified above all non-identical copies of the last draft or final version of any documents or records (including documents or records in electronic form) now in its possession or control or which come into its possession or control that relate in any manner to the performance of the Work, provided, however, that the Settling Defendant (and its contractors and agents) must retain, in addition, copies of all data generated during the performance of the Work and not contained in the aforementioned documents required to be retained.  Each of the above record retention requirements shall apply regardless of any corporate retention policy to the contrary.

107.    At the conclusion of this document retention period, Settling Defendant shall notify the EPA at least ninety (90) days prior to the destruction of any such records or documents, and, upon request by the United States, Settling Defendant shall deliver any such

records or documents which are not privileged to EPA. The Settling Defendant may assert that certain documents, records and other information are privileged under the attorney-client privilege, attorney work product privilege, or any other privilege recognized by federal or, if applicable, State law. If the Settling Defendant asserts such a privilege, it shall provide the Plaintiff with the following, if known:  (a) the title of the document, record, or information; (b) the date of the document, record, or information; (c) the name and title of the author of the document, record, or information; (d) the name and title of each addressee and recipient; (e) a description of the subject matter of the document, record, or information; and (f) the privilege asserted by Settling Defendant. However, no final documents, final reports or other information created or generated pursuant to the requirements of the Consent Decree shall be withheld on the grounds that they are privileged.

108.    The Settling Defendant hereby certifies that, to the best of its knowledge and belief, after thorough inquiry, it has not altered, mutilated, discarded, destroyed or otherwise disposed of any records, documents or other information (other than identical copies) relating to its potential liability regarding the Site since notification of potential liability by the United States regarding the Site and that it has fully complied with any and all EPA requests for information pursuant to Section 104(e) and 122(e) of CERCLA, 42 U.S.C. §§ 9604(e) and 9622(e), and Section 3007 of RCRA, 42 U.S.C. § 6927.

## XXVI. NOTICES AND SUBMISSIONS

109.    Whenever, under the terms of this Consent Decree, written notice is required to be given or a report or other document is required to be sent by one Party to another and/or to the State, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Party and the State in writing.

All notices and submissions shall be considered effective upon receipt by the Parties, unless otherwise provided.  Written notice as specified herein shall constitute complete satisfaction of any written notice requirement of the Consent Decree with respect to the United States, EPA, the State, and the Settling Defendant, respectively.

As to the United States:
Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611
Re: DJ # 90-11-3-07993/4

As to EPA:
Paula Schmittdiel, RPM
United States Environmental Protection Agency - Region 8
999 18th Street, Suite 300
Mail Code 8EPR-SR
Denver, CO 80202-2466
Phone:  303-312-6861
e-mail:  schmittdiel.paula@epa.gov

Jude Hobza, PE (EPA's On-site Representative)
United States Army Corps of Engineers - Rapid Response
P.O. Box 13287
Building 525 Castle Hall
Offutt AFB, NE 68113
Phone:  402-293-2530
e-mail:  jude.t.hobza@usace.army.mil

Joe Shields, P.E.
HDR Engineering, Inc.
8404 Indian Hills Drive
Omaha, NE  68114-4098
Phone: 402-399-4833
e-mail: jshields@hdrinc.com

As to the Regional Financial Management Officer:
Martha Walker
EPA Finance Officer
United States Environmental Protection Agency
999 18th Street, Suite 300

Mail Code 8TMS-F
Denver, CO 80202-2466
e-mail: walker.martha@epa.gov

As to the State:
Executive Director
Utah Department of Environmental Quality
168 North 1950 West
P.O. Box 144840
Salt Lake City, Utah  84114-4840

With copy to:
Eureka Mills Superfund Site Project Manager
Utah Department of Environmental Quality
Division of Environmental Response and Remediation
168 North 1950 West
P.O. Box 144840
Salt Lake City, Utah  84114-4840

As to the Settling Defendant:
Gary L. Honeyman
Manager Environmental Site Remediation
Union Pacific Railroad Company
221 Hodgeman
Laramie, WY  82072
e-mail:  glhoneym@up.com

Robert C. Bylsma, Esq.
Union Pacific Railroad Company
10031 Foothills Blvd.
Suite 200
Roseville, CA  95747
e-mail:  rcbylsma@up.com

## XXVII.  **EFFECTIVE DATE**

110.    The effective date of this Consent Decree shall be the date upon which it is
entered by this Court.

## XXVIII.  **RETENTION OF JURISDICTION**

111.    This Court retains jurisdiction over both the subject matter of this Consent Decree
and the Settling Defendant for the duration of the performance of the terms and provisions of this

68

Consent Decree for the purpose of enabling either of the Parties to apply to the Court at any time for such further order, direction, and relief as may be necessary or appropriate for the construction or modification of this Consent Decree, or to effectuate or enforce compliance with its terms, or to resolve disputes in accordance with Section XIX (Dispute Resolution) hereof.

## XXIX. APPENDICES

112.    The following appendices are attached to and incorporated into this Consent Decree:

   a.    "Appendix A" contains two maps - the first map illustrates the Site boundaries and the UEG Remedial Action Area boundary and the second map shows the location of the Lime Peak Quarry;

   b.    "Appendix B" is the ROD;

   c.    "Appendix C" is a map of Response Action Structures located on Settling Defendant's Property;

   d.    "Appendix D" contains, by material, type, and volume, and unit rates for, Quarry Material to be provided by Settling Defendant; and

   e.    "Appendix E" contains a form of easement to be filed in the chain of title for property upon which a Response Action Structure is or will be built.

   f.    "Appendix F" contains an identification of Settling Defendant's property which will be transferred to the City of Eureka in accordance with Paragraph 24.

## XXX. COMMUNITY RELATIONS

113.    Settling Defendant shall cooperate with EPA in providing information regarding the Work to the public.  As requested by EPA, Settling Defendant shall participate in the

preparation of such information for dissemination to the public and in public meetings which may be held or sponsored by EPA to explain activities at or relating to the Site.

## XXXI. MODIFICATION

114.    Schedules specified in this Consent Decree for completion of the Work may be modified by agreement of EPA and the Settling Defendant, after notice to the State.  All such modifications shall be made in writing.

115.    Except as provided in Paragraph 15 (Modification of the Remedial Action Work Plan), no material modifications shall be made to the RAWP without written notification to and written approval of the United States, Settling Defendant, and the Court, if such modifications fundamentally alter the basic features of the selected remedy within the meaning of 40 C.F.R. § 300.435(c)(2)(B)(ii).  Modifications to the RAWP that do not materially alter that document, or material modifications to the RAWP that do not fundamentally alter the basic features of the selected remedy within the meaning of 40 C.F.R. § 300.435(c)(2)(B)(ii), may be made by written agreement between EPA and the Settling Defendant.

116.    Nothing in this Decree shall be deemed to alter the Court's power to enforce, supervise or approve modifications to this Consent Decree.

## XXXII. LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

117.    This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) days for public notice and comment in accordance with Section 122(d)(2) of CERCLA, 42 U.S.C. § 9622(d)(2), and 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations which indicate that the Consent Decree is inappropriate, improper, or inadequate.

Settling Defendant consents to the entry of this Consent Decree, in the form presented here, without further notice.

118.    If for any reason the Court should decline to approve this Consent Decree in the form presented here, this agreement is voidable at the sole discretion of either Party and the terms of the agreement may not be used as evidence in any litigation between the Parties.

### XXXIII.  SIGNATORIES/SERVICE

119.    Each undersigned representative of the Parties certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind such Party to this document.

120.    The Settling Defendant hereby agrees not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree unless the United States has notified the Settling Defendant in writing that it no longer supports entry of the Consent Decree.

121.    The Settling Defendant shall identify, on the attached signature page, the name, address and telephone number of an agent who is authorized to accept service of process of the complaint by mail on behalf of the Settling Defendant.  Settling Defendant hereby agrees to accept service of the complaint in that manner and to waive the formal service requirements for a complaint set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court.  The Parties agree that Settling Defendant need not file an answer to the complaint in this action unless or until the Court expressly declines to enter this Consent Decree.

### XXXIV.  FINAL JUDGMENT

122.    This Consent Decree and its appendices constitute the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Consent Decree.  The Parties acknowledge that there are no representations,

agreements or understandings relating to the settlement other than those expressly contained in this Consent Decree.

123.    Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between and among the United States and the Settling Defendant.   The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

SO ORDERED THIS 11th DAY OF Nov., 2005.

_____
United States District Judge

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of United

States v. the Union Pacific Railroad Company, Civ. No. _____ (D. Utah) relating to the

Eureka Mills Superfund Site.

FOR THE UNITED STATES OF AMERICA

Date: 7/20/05          Signature: _____

JOHN C. CRUDEN
Deputy Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611

Date: 7/20/05          Signature: _____

JOHN N. MOSCATO
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
999 18th Street, Suite 945 N
Denver, CO 80202

73

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of United States v. The Union Pacific Railroad Company, et al., Civ. No. _____ (D. Utah) relating to the Eureka Mills Superfund Site.

**FOR THE U.S. EPA**

Date: **07/05/2005**       Signature: *Eddie A. Sierra*

*for* CAROL RUSHIN
Assistant Regional Administrator, Region 8
Office of Enforcement, Compliance and
Environmental Justice
U.S. Environmental Protection Agency
999 18th Street, Suite 300
Denver, Colorado 80202 – 2466

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of United States v. The Union Pacific Railroad Company, et al., Civ. No. _____ (D. Utah) relating to the Eureka Mills Superfund Site.

**FOR THE SETTLING DEFENDANT UNION PACIFIC RAILROAD COMPANY**

Date: 6/15/05

Signature: _____

J. Michael Hemmer
Senior Vice President-Law and General Counsel
Union Pacific Railroad Company
1400 Douglas Street, Mail Stop 1580
Omaha, Nebraska  68179

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Lawrence E. Wzorek
Assistant Vice President-Law
Union Pacific Railroad Company
1400 Douglas Street, Mail Stop 1580
Omaha, Nebraska  68179

75